THE BROOKLYN HEIGHTS RAILROAD COMPANY, Respondent, *v.* THE CITY OF BROOKLYN, Appellant.

1. STREET RAILWAY — RIGHT TO USE STREET NOT NAMED IN ARTICLES OF ASSOCIATION. The use of a city street, not named in its articles of association, by a company organized under the Street Surface Railroad Act (L. 1884, ch. 252), merely for hauling cars to and from a car storehouse, is impliedly, if not expressly, sanctioned by the law when a majority of the abutting owners consent and the storehouse is located upon the only vacant land available, which was not within the restrictions imposed by the resolution whereby the city authorized the company to make necessary connections in the street named in the articles and "in such parts of those adjacent thereto as may be necessary."

2. CORPORATIONS — IMPLIED POWERS. What a corporation may or may not do within its grant of powers is to be determined by the reasonable intendments of its charter as well as its clear expressions of authority.

(Argued March 3, 1897; decided March 16, 1897.)

APPEAL from a judgment of the General Term of the City Court of Brooklyn, entered May 4, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiff to restrain the defendant from interfering with the construction of tracks to connect its storehouse for cars with its railroad. The defense was that the connections proposed to be constructed by the plaintiff were beyond the powers conferred upon it, and that, at any rate, the consent of the common council of the city was necessary in order to authorize the plaintiff to enter upon the streets in question. The plaintiff had judgment, authorizing it to lay the tracks described in the complaint and restraining

the defendant from interference in making the proposed connections. The judgment was affirmed upon appeal, by the General Term of the City Court of Brooklyn, and from the judgment of affirmance the defendant has appealed to this court. The material facts are not in dispute. The plaintiff was organized as a railroad corporation, under the Street Surface Railroad Act (Ch. 252, Laws of 1884), for the purpose of constructing and operating its railroad on Montague street, in the city of Brooklyn, and, after having obtained the consent of more than a majority, in value, of the property owners abutting on Montague street, applied for and obtained the consent of the city, through a resolution of its common council, to the construction, maintenance and operation of its railroad, upon conditions specified in the resolution of the common council. After describing the route of the railroad to be from the intersection of Court and Montague streets, through Montague street, to a terminus at Wall Street ferry, the resolution gave "authority to construct and maintain in said street, and in such parts of those adjacent thereto as may be necessary, all necessary connections, switches, sidings, turnouts, turntables and suitable stands for the convenient operation of said road and the housing and care of its cars and other equipments, and the connecting said road with its power stations." The resolution required that the plans of construction and connections with power stations should be subject to the approval of the commissioner of public works, and provided "that no cars shall be housed or stored on the main line of Montague street, or any of the adjacent streets, at any place east of the top of the hill leading to Wall Street Ferry." Pursuant to the requirement of the resolution of the common council, that the franchise and privilege to construct and operate the street surface railroad, and the connections therewith, should be sold at public auction, under terms and conditions specified, such a sale was made to the plaintiff as the highest bidder thereat. The plaintiff complied with all the terms and conditions imposed upon the purchaser at the sale and, also, subsequently obtained the consent of the city and of

the property owners to operate its road by either cable or electric power; instead of being confined to the use of electric power, as expressed in the previous consents. The plaintiff then completed the road and entered upon its operation; but it had no adequate, nor suitable, place for housing its cars. For the purpose of a power station and of a storehouse for its cars, it bought a plot of land on State street; a street lying some 1,270 feet south of Montague street. In order to haul its cars from the terminus of its road, at Wall Street ferry, to the storehouse, it contracted with the Brooklyn City Railroad Company for the use of its tracks upon Furman street, which runs along the river and intersects Montague and State streets, and, also, obtained the consents of more than a majority in value of the property owners along the proposed route of connection with the storehouse. It, also, procured the approval of the commissioner of public works to the plan of connection; which consisted in a curve connecting its terminus at Wall Street ferry with the Brooklyn City Railroad Company's track and in a curve joining a short single track, extending from the last-named company's tracks, at the intersection of State street with Furman street, for a trifling distance, to the storehouse upon State street. Upon beginning the work of making these connections with its storehouse, the city interfered and endeavored to prevent the plaintiff from continuing that work. Thereupon this action was commenced to restrain such interference by the city.

*Joseph A. Burr* for appellant. An attempt to build a street railroad upon a public highway without lawful authority to do so is a public nuisance which the municipality may prevent. (*Fanning* v. *Osborne*, 102 N. Y. 441.) There is no power in the city of Brooklyn, acting as a municipality, to authorize the construction and operation of a railroad on a public street. (*Milhau* v. *Sharp*, 27 N. Y. 611; *Fanning* v. *Osborne*, 102 N. Y. 447; Const. of 1846, art. 3, § 18; L. 1884, ch. 252; L. 1886, ch. 65; L. 1886, ch. 642; L. 1889, ch. 564.) The legislature having prescribed the manner in

which consents on the part of the local authorities should be obtained, no franchise is valid unless obtained in the manner so prescribed, and all other modes of granting such franchise are forbidden. (*Beekman* v. *T. A. R. R. Co.,* L. J., Feb. 4, 1897.) The common council of the city of Brooklyn is by statute made the local authority from whom consent must be obtained. (L. 1884, ch. 252, § 3.) If the consent of the common council given to the plaintiff did in terms give it the right to construct a road through Furman and State streets, such consent, not having been given in the manner required by the statutes, is wholly void. (*Hilton* v. *T. F. S. R. R. Co.,* 1 How. [N. S.] 453; L. 1884, ch. 252, §§ 1, 3, 14; L. 1886, chs. 65, 364; L. 1889, ch. 364.) The fact that the plaintiff is not incorporated to run a road on Furman street, makes its arrangement with the Brooklyn City Railroad Company void, since that company could only lease such use of its track to another street railroad company authorized to run on that street. (L. 1884, ch. 252, § 15.) The claim of the plaintiff that it does not use Furman and State streets to transact public business as a street railroad carrying passengers, but only for the purpose of transporting its cars back and forth from the storehouse to the terminus of its road is immaterial. (*Fanning* v. *Osborne,* 102 N. Y. 441.) Conceding that the word adjacent may be a broader word than adjoining or contiguous, under the most liberal rules of construction, it must be construed as meaning the nearest street to Montague street upon which accommodations for such storage house could be obtained. (*C. I. Co.* v. *Phelps,* 47 Mich. 299; *People* v. *Schermerhorn,* 19 Barb. 540; *Acres* v. *N. J. R. R. Co.,* 43 N. J. L. 110.) All franchises granted to private corporations are to be strictly construed, and the grantees take nothing by implication. (*A. & C. P. R. Co.* v. *Douglass,* 9 N. Y. 444; *Syracuse W. Co.* v. *City of Syracuse,* 116 N. Y. 167.)

*Henry D. Hotchkiss* for respondent. The claim that the plaintiff's charter to construct and operate a road in Montague

street does not entitle it to lay a track in State street to connect the road with its storehouse through the medium of the Brooklyn City tracks on Furman street, is untenable. (L. 1884, ch. 252, § 3; L. 1886, ch. 642; *People* v. *B., F. & C. I. R. Co.*, 89 N. Y. 91; *Moore* v. *B. C. R. R. Co.*, 31 Hun, 90; *C. & T. S. R. Co.* v. *C. C. R. Co.*, 67 Barb. 315.) The whole argument of the appellant is erroneous and rests on the theory that the respondent seeks to operate a road on State and Furman streets, while its certificate of incorporation confines it to the operation of a road·on Montague street. (*In re U. El. R. R. Co.*, 113 N. Y. 275; *People* v. *B., F. & C. I. R. Co.*, 89 N. Y. 75; *N. Y. C. & H. R. R. R. R. Co.* v. *M. G. L. Co.*, 63 N. Y. 326; Mills on Em. Domain, § 59; 1 Rorer on Railroads, § 489; 1 Wood's Railway Law, 479.)

GRAY, J. The question presented concerns the power of the plaintiff to make use of these other streets for the purpose of storing its cars. The necessity for a storehouse cannot be disputed; but the proposition of the appellant is that, as neither Furman nor State streets were mentioned in the plaintiff's articles of association, or any other street except Montague street, it has no power to operate a railroad upon them, and that none could be conferred by the city, either expressly, or by implication. It is argued for the city that the plaintiff is rigidly confined to the route mentioned in its articles of incorporation and in its petition to the common council, and that the license to construct necessary connections in or with streets adjacent to Montague street is inoperative for want of power in the common council of the city to grant it.

If it were true that the plaintiff was seeking to operate a railroad elsewhere than upon Montague street, then it certainly would be acting beyond its corporate franchises and powers, and no consent by the city could supply the want of power. But what the plaintiff seeks to do, in constructing this connection with its power and storage house on State street, is merely incidental to its franchise to operate a railroad on Montague street. By the law of its incorporation,

the plaintiff was authorized to construct such "switches," or "sidings" and "suitable stands," as might be "necessary for the convenient working of the road." By the limitations imposed upon it in the resolution of the common council, it was prevented from storing cars either on Montague street, or on any of the adjacent streets, at any place east of the top of the hill leading to Wall Street ferry. This restricted very much the area of territory available under the circumstances to the plaintiff for the purpose of a storehouse. The finding of fact below, upon the evidence in the case, was, that "State street is the first street adjacent to Montague street not devoted to private residences of the best class, and the site so selected was the only site, which, after long search, was found practicable for the purposes aforesaid." But it is said, in behalf of the city, that "the adjacent street," which the resolution of the common council authorizes the plaintiff to use for necessary connections, means the nearest street to Montague street upon which accommodations for a storehouse could be obtained. That would be true, under ordinary circumstances, and if it appeared that the plaintiff might, in reason, have located its storehouse upon a nearer street, it would have been the duty of the court to have held it to the more reasonable use of its privilege. But the decision of the trial judge, amply supported by the evidence in the case, shows that the only vacant land available for the storehouse, which was not within the restrictions of the resolution and which the plaintiff should have been required to purchase, was the State street plot. So far as the determination of the question depends upon the proof of what the plaintiff could reasonably have done in locating a storehouse for the housing of its cars, we may regard any doubt as removed by the findings in the case.

When we consider the question of the existence of authority in the plaintiff to use these other streets, for the purpose of having a storehouse and of connecting its railroad therewith, I think we may readily dispose of it upon the theory that it was a reasonable necessity, impliedly, if not expressly, sanc-

tioned by the law of its creation.   When we speak of what a corporation may, or may not, do within its grant of powers, we have in mind the reasonable intendments of its charter, as well as its clear expressions of authority.   We search, in a doubtful case of an exercise of power, not in terms conferred, for what may be deemed to be reasonably implied as a means of carrying out the powers specifically given and so as to permit of the amplest exercise thereof, which is consistent with the object and purpose of the public grant.   A railroad corporation is, particularly, called upon to consult the public convenience and what is done by it in that direction should be sustained; if support for the act is possible to be found in the law of its being.   If a reasonable necessity exists, in a proper discharge of its duties to the public, for the act complained of, that should be a sufficient answer to the complaint. That seems to be this case.   The plaintiff was certainly authorized to construct what was needed for the convenient working of its railroad; but the public authorities, for manifest reasons bearing upon the public comfort, precluded it from locating a power and storage house except at points outside of the residential portion of that particular part of the city.   The public considerations of convenience, that motived this restriction of location, contain the justification of the plaintiff for doing what it undertook for that convenient working of its road, which the general law seems to intend. It is not proposed to use these connecting tracks, in any sense, as a part of the plaintiff's road, or as a part of the corporate franchise.   Indeed, the hauling of the cars to and fro is not even to be done by cable power.   If it should be said that the plaintiff cannot, when, apparently, justified by the form of the consent of the local authorities and, in addition, fortified by the consent of the property owners upon the streets affected, make use of State street for the purpose of housing its cars, it would be holding that there was no elasticity in the general law permitting such corporate acts as were required by the reasonable necessities of the corporation and as would be in furtherance of the public convenience.   There is no question

here as to the good faith of the plaintiff, nor room to doubt as to its having done the only thing which was practicable, in order that it should have a storehouse for its cars. Within its needs and means, and within the territorial area open to it for the purpose, the trial court has found that it has procured the nearest land for the location of such a building.

I have assumed in this discussion that it was really open to the city to object to the plaintiff's location of its storehouse and to its proposed work of construction to connect its road therewith. In view of the broad language of the license, contained in the consent of the city, and in view of the approval of the commissioner of public works, which was stipulated for in the resolution of the common council with respect to the plans of construction and connections, it is a serious question whether the city can now be heard to object to the right of the plaintiff to make these connections. But, as we hold with the plaintiff upon the merits of the action, it is not necessary to discuss that question.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____