George W. Smyth, Respondent, *v.* The Brooklyn Union Elevated Railroad Company et al., Appellants.

1. Review of Conclusion of Law Erroneously Denominated a Finding of Fact. The rule reiterated that a finding, when it is a statement of conclusions of law, can be reviewed upon an exception, although denominated a conclusion of fact.

2. Elevated Railroad — Erroneous Granting of Injunction. An agreement entered into between a landowner and the elevated railroad company provided, after reciting a consideration, that the owner of the property "doth hereby consent that the party of the second part may pass all depots, stables, power stations on the said above-described premises, and maintain its elevated railroad structure on and over said street and operate its elevated railroad thereon as the same is now constructed without compensation therefor to the party of the first part," and was followed by a provision releasing and discharging the railroad company from all claims and demands for compensation for damages theretofore incurred. An action was brought for an injunction against the maintenance of the railroad and for damages incurred by reason of its past maintenance and operation. *Held*, that the agreement operated as an estoppel. A party is entitled to no greater relief in an equitable action than in proceedings to condemn property.

*Smyth* v. *Brooklyn Union El. R. R. Co.*, 121 App. Div. 282, modified.

(Argued October 21, 1908; decided November 10, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 1, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term which granted a conditional injunction against the maintenance of the defendants' railroad structure in front of plaintiff's premises and awarding to the plaintiff $1,400 damages.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles L. Woody* and *George D. Yeomans* for appellants. The consent is a complete bar to this action. (*White* v. *M. R. Co.*, 139 N. Y. 19; *Foote* v. *El. R. R. Co.*, 147 N. Y. 371; *Ward* v. *M. El. R. R. Co.*, 152 N. Y. 43; *Conabeer* v. *N. Y. & H. R. R. Co.*, 156 N. Y. 482; *Mattes* v.

*Frankel,* 157 N. Y. 611 ; *Heimburg* v. *M. R. Co.,* 162 N. Y. 355 ; *Paige* v. *S. Ry. Co.,* 178 N. Y. 113 ; *Storms* v. *Man. Ry. Co.,* 178 N. Y. 507 ; *Hindley* v. *Man. Ry. Co.,* 185 N. Y. 342 ; *Koehler* v. *N. Y. El. R. R. Co.,* 9 App. Div. 451 ; *Kornder* v. *K. Co. El. R. R. Co.,* 41 App. Div. 360.) The Appellate Division erred in construing this instrument to be a license, revocable by the abutting owner. ( *White* v. *Man. Ry. Co.,* 139 N. Y. 19 ; *Paige* v. *S. R. Co.,* 178 N. Y. 112 ; *Child* v. *Barnum,* 11 Barb. 14 ; *Oakley* v. *Boerman,* 21 Wend. 588 ; *M. L. Ins. Co.* v. *Yates,* 35 App. Div. 218 ; *Van Amburge* v. *Kramer,* 18 Hun, 205 ; *Dorwin* v. *Westbrook,* 86 Hun, 363.) The construction of this consent and release by the Appellate Division to the effect that there was no intention to grant a right in perpetuity was error. ( *Trustees of Southampton* v. *Jessup,* 161 N. Y. 126 ; *Valentine* v. *Schreiber,* 3 App. Div. 238 ; *Mumford* v. *Whitney,* 15 Wend. 393.) That portion of the instrument which releases and discharges the party of the second part, its successors and assigns, from any and all claims and demands for any such compensation arising from or connected with such maintenance of said structure, and the operation of its railroad as now constructed and operated, is of itself a complete bar to this action. ( *People ex rel.* v. *Storms,* 97 N. Y. 364 ; *Clute* v. *N. Y. C. & H. R. R. R. Co.,* 120 N. Y. 267 ; *Matter of Ladue,* 118 N. Y. 218 ; *Kirchner* v. *N. H. S. M. Co.,* 135 N. Y. 182 ; *Jackson* v. *Stackhouse,* 1 Cow. 122 ; *Keane* v. *Keane,* 86 Hun, 159.)

*Cyrus V. Washburn* for respondent. The instrument creates no interest in land. It gives a mere revocable license. The license has been revoked. ( *White* v. *M. E. R. Co.,* 139 N. Y. 19 ; *Arnold* v. *H. R. Co.,* 55 N. Y. 661 ; *Wiseman* v. *Lucksinger,* 84 N. Y. 31 ; *F. R. Co.* v. *Olmstead,* 84 App. Div. 127 ; *Nellis* v. *Munson,* 108 N. Y. 453 ; *Cronkhite* v. *Cronkhite,* 94 N. Y. 323 ; *Vanderberg* v. *Bergen,* 13 Johns. 212 ; *Mumford* v. *Whitney,* 15 Wend. 380 ; *Fargis* v. *Walton,* 107 N. Y. 398, 403 ; *Winne* v. *U. C. Sav. Inst.,* 37 Hun, 349–351.) The second paragraph of the instrument is a

release only of the past or rental damages arising from the maintenance and operation of the road up to the date of the instrument.   No interest in the land was thereby created, nor was any possible claim for future damages thereby barred. (*Pond* v. *Met. El. R. Co.*, 112 N. Y. 186; *Uline* v. *N. Y. C. R. R. Co.*, 101 N. Y. 98; *Foote* v. *Met. El. R. Co.*, 147 N. Y. 367.)

WILLARD BARTLETT, J.   This is the familiar suit of a property owner for a conditional injunction against the maintenance of an elevated railroad and for damages incurred by reason of its past maintenance and operation.   Two pieces of property are involved.   As to one of them the plaintiff's right to recover was undisputed and it was conceded that he was entitled to an award of $1,000 on account of the damage to that piece.   As to the other, however, the defendants relied upon a written instrument executed by the plaintiff's predecessors in title as a bar to the action; and the determination of the present appeal depends upon the effect which should be given to that instrument.   If it is nothing more than a revocable license, as has been held at Special Term and by the Appellate Division, the defendants concede that the judgments below were right.   If, on the other hand, this constituted an effective grant of the easements now claimed by the plaintiff or an estoppel against the plaintiff's claim for relief, the judgment in his favor is too broad so far as the injunction is concerned, and is too large by the sum of $400.

The title of the plaintiff to the property in question, which is situated on Fulton street in the borough of Brooklyn, was derived from the Brooklyn City Railroad Company, and extends to the middle of the street.   On the 3d of June, 1893, the Brooklyn City Railroad Company, as party of the first part, executed and delivered to the Kings County Elevated Railroad Company, the predecessor of the defendants, as party of the second part, an instrument in writing under seal which recited that the Kings County Elevated Railroad Company then maintained and operated its elevated railroad in front of

22

the premises, and that the Brooklyn City Railroad Company had agreed that it might so maintain and operate the same and further provided as follows: "Now, therefore, in consideration of the premises and the sum of one dollar, paid by the party of the second part to the party of the first part, the receipt whereof is hereby acknowledged, said party of the first part doth hereby consent that the party of the second part may pass all depots, stables, power stations on the said above described premises and maintain its elevated railroad structure on and over said street, and operate its elevated railroad thereon, as the same is now constructed, without compensation therefor to the party of the first part.

"And the party of the first part, for itself, its successors and assigns, hereby releases and discharges the party of the second part, its successors and assigns, from any and all claims and demands for any such compensation arising from or connected with such maintenance of said structure, and the operation of its railroad, as now constructed and operated."

The trial court found that the said consent "was not intended as a grant and gave the defendant no easements or interests in the land involved in this case; that it created a mere license as between the parties thereto and that the plaintiff is not thereby precluded from maintaining this action as to said premises; and that said elevated railroad was neither constructed nor put in operation upon the faith of said consent." The learned counsel for the respondent insists that in view of the unanimous affirmance of this finding by the Appellate Division the Court of Appeals is without jurisdiction to review this case; in other words, that we cannot pass upon the legal effect of the instrument of consent. As to this objection it is only necessary to point out that the finding, although denominated a conclusion of fact, is, except the last clause therein contained, only a statement of conclusions of law. The exception to this finding, therefore, brings up a question of law which can be reviewed in this court.

We are unable to agree with the courts below in the construction which they have placed upon the instrument in ques-

tion.   When that instrument was executed and delivered, the
Brooklyn City Railroad Company appears to have been in occu-
pation of the property for its corporate purposes.   The Kings
County Elevated Railroad Company had erected its elevated
railroad structure in front of the premises and had operated its
trains over the same for many years.   If the instrument had
been intended to be a mere license revocable at will it is
difficult to perceive any adequate reason for its execution so
far as the future was concerned.   Thus viewed, it effected
no change in the legal relation of the parties.   The pre-
existing oral license was just as good.   When, however, we
consider the situation of both parties to the instrument and
the language of the paper itself it seems to us quite clear that
it was the intent of the property owner to give much more
than a license.   The party of the first part consented that the
party of the second part might "maintain its elevated rail-
road structure on and over said street, and operate its elevated
railroad thereon, as the same is now constructed, *without
compensation therefor* to the party of the first part."   This
phrase is vitally significant.   "Compensation" is the word
used in the constitutional provision which regulates the tak-
ing of private property for public use.   (Const. of 1894, art.
1, § 7.)   The term as used in this consent could have no
natural application to the release of any claim for past dam-
ages.   That was dealt with in a subsequent part of the instru-
ment.   The phrase indicates that the parties contemplated
the continued invasion of the property owner's easements in
the street without insisting upon the payment therefor to
which the property owner would otherwise have been
entitled.

We have here, as in the case of *White* v. *Manhattan Rail-
way Co.* (139 N. Y. 19), a full, unconditional and absolute
consent given by the property owner for the maintenance
and operation of an elevated railroad in front of his premises.
The learned court below, however, distinguished the effect of
the release in this case from that in the *White* case in that
the plaintiff there was a mere abutter while in the present

case the plaintiff's predecessor in title was the owner of the fee.    There is doubtless a distinction between the two cases. The mere abutter has only an easement in the street and when he gives a consent for the construction and maintenance of the railroad he releases or abandons so much of the easements as is interfered with or taken by the railroad.    Where the abutter also owns the fee of the street in front of his land the railroad takes from him an easement in the land in the street.    But this distinction in circumstance leads to no difference in the effect to be attributed to the consents in the two cases.    Both the easements of the mere abutter and the fee of the street are alike within the constitutional protection, and neither can be acquired by a railroad company except by the procedure prescribed by the Constitution unless the owner voluntarily seeks redress in a court of equity.    The invasion of the easements of the abutter can be authorized only by grant or prescription for twenty years, and the easement in the fee of the street can be conferred only in the same manner.    The same rule of construction should, therefore, apply to the instruments in both cases.    The defendant, it is true, was at the time of the execution of the instrument merely a trespasser, but it was not in the situation of an ordinary trespasser.    It had the power and authority to maintain its railroad provided it acquired by condemnation the necessary property rights.    Of course it did not intend to abandon its costly structure in the city streets.    Neither the parties nor any one else contemplated such a course of conduct.    All understood that practically, though not in law, the abutters, whether owning the fee of the street or not, would obtain, not the removal of the structure, but compensation for their rights. What the plaintiff's predecessor intended to release was the right to compensation, not merely for any past entry, but for the acquisition of its property rights by the railroad company which would otherwise be compelled to institute condemnation proceedings to ascertain the amount of that compensation.    Assuming, but not conceding, that the instrument would be inoperative as a grant, certainly it was effective as

an estoppel for any compensation that might be awarded in condemnation proceedings. The plaintiff can be entitled to no greater relief in this action in equity than he would have been had the defendant instituted proceedings to condemn the property.

The judgment should be modified by excluding from the operation of the injunction that portion of the defendant's railroad in front of the plaintiff's property running 20 feet from the corner of South Portland avenue, and by reducing the award of damages from $1,400 to $1,000, with costs to the appellants in this court.

CULLEN, Ch. J., GRAY, VANN, WERNER and HISCOCK, JJ., concur; CHASE, J., dissents.

Judgment modified.