THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant, *v.* ALFRED E. STEERS, Individually and as President of the Borough of Brooklyn, et al., Respondents.

Railroads — a franchise to maintain and operate a street surface railroad does not authorize the railroad company to construct and maintain side tracks for private purposes — municipal permission therefor — revocation of such permission.

1. A franchise to maintain and operate a street surface railroad in and through designated streets, granted under and in pursuance of the Railroad Law (L. 1890, ch. 565, §§ 90-93, and amendatory statutes), does not carry with it the right to maintain a spur or siding between its main tracks in a street and a private freight station, maintained for the use and convenience of a company owning a factory. The maintenance and use of this siding does not bear a relation so direct and necessary to the fulfillment of the functions of the railroad company as to bring it by fair implication within the scope of the grant.

2. Such spur or siding cannot be maintained upon the ground that it is lawfully in the highway by force of express license, apart from the rights of the railroad company under its franchise, because

it was built under a permit issued by the chief engineer of highways of the municipality. No such license can enlarge the powers of the railroad company. Even if lawful in its origin, it is a revocable privilege, and where, by resolution of the municipal authorities, the railroad has been directed to remove the siding, and the permit, under the authority of that resolution, has been revoked, the force of the license has been spent. (*Brooklyn Heights R. R. Co.* v. *City of Brooklyn,* 152 N. Y. 244; *Hatfield* v. *Straus,* 117 App. Div. 671; 189 N. Y. 208, distinguished.)

*Brooklyn Heights R. R. Co.* v. *Steers,* 158 App. Div. 948, affirmed.

(Argued October 19, 1914; decided November 10, 1914.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 7, 1913, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles L. Woody* and *George Yeomans* for appellant. The findings of fact show that the said spur or switch was devoted to a public use and is a part of the plaintiff's railroad. (*Matter of Stillwater* v. *Met. St. Ry. Co.,* 171 N. Y. 697; *Degraw* v. *L. I. E. Ry. Co.,* 43 App. Div. 502; 163 N. Y. 507; *Ingersoll* v. *Nassau E. R. R. Co.,* 157 N. Y. 453; *Rodney* v. *B. C. & N. R. Co.,* 32 App. Div. 311; *Clark* v. *Blackman,* 47 N. Y. 156; *Dulaney* v. *U. S. R. & E. Co.,* 104 Md. 423; *Brown* v. *C. W. Ry. Co.,* 137 Mo. 529; *Hatfield* v. *Straus,* 117 App. Div. 673.) The right to maintain and operate a railroad in Nostrand avenue, with the right to carry freight thereon, implies the right to install the necessary turnouts and switches. (*Hollis* v. *B. H. R. R. Co.,* 128 App. Div. 823; *People ex rel. N. Y. & R. G. Co.* v. *Cromwell,* 89 App. Div. 291; *Wooley* v. *G. S. & N. R. R. Co.,* 83 App. Div. 126; *Wyoming* v. *W. B. & W. S. Ry. Co.,* 8 Kulp [Pa.], 113; *N. O. & C. R. R. Co.* v. *Second Municipality,* 1 La. Ann. 128; *Knight* v. *C. R. R. Co.,* 9 La. Ann. 284;

*Romer* v. *St. P. R. Co.,* 75 Minn. 211; *Mayor* v. *H. B.* & *M. P. Ry. Co.,* 84 Tex. 595; *Chicago Dock Co.* v. *Garrity,* 115 Ill. 155.)

· *Frank L. Polk, Corporation Counsel* (*Edward A. Freshman* and *James D. Bell* of counsel), for respondents. The plaintiff made no case for the intervention of a court · of equity, as the switch or turnout which it desired to protect was an illegal obstruction of the street, being maintained for a private and not for a public use. _ (*Fanning* v. *Osborne,* 102 N. Y. 441; *Paige* v. *Schenectady Ry. Co.,* 178 N. Y. 102.)

CARDOZO, J.   The plaintiff, a street railroad corporation, has built a spur between its main tracks and a factory held in private ownership.   The city of New York has ordered that the spur be removed.   The question · is whether it constitutes an illegal obstruction of the highway.

The Arabol Manufacturing Company is a corporation engaged in the manufacture and sale of paste and similar products.   It has a factory at 56 Nostrand avenue, Brooklyn.   The spur or siding in controversy connects this factory through a curved turnout with the tracks in the centre of the street.   It was built in 1904 by the plaintiff, the Brooklyn Heights Railroad Company, under a permit issued by the chief engineer of highways in the borough · of Brooklyn.   Shipments of the Arabol Manufacturing Company's products are made to its customers through the use of this siding.   Shipments of goods purchased by the company are made through the same means.   That is the extent of its use.   The finding is that the station at 56 Nostrand avenue is not a public freight station, but a private one, maintained for the use and convenience of the Arabol Manufacturing Company exclusively.      ·

The case of *Hatfield* v. *Straus* (117 App. Div. 671; 189 N. Y. 208), though similar in some of its features, is not decisive of this controversy.   In that case the city of

New York had granted to R. H. Macy & Co. a license to lay a siding in the highway. R. H. Macy & Co. was not a street railroad corporation. It held no franchise empowering it to operate a railroad in the city's streets. In the language of this court: "no railroad applied for the consent in question, and no right was granted to any such corporation." The consent did not constitute, and was not claimed to constitute, a franchise. The question, therefore, was whether a license to maintain tracks in the city streets could lawfully be granted to a business corporation, and it was that question which this court then answered in the negative.

We are confronted in this case by a different problem. Here it is a street railroad corporation, holding a lawful franchise to occupy the city streets, which is before the court, insisting upon its right to maintain the siding, both by force of the license granted to it in 1904, and, irrespective of the license, as an incident to its franchise to operate its road. Recognizing the force of the distinction, as we do, we think it does not avail to make the obstruction legal.

The plaintiff's argument that it is lawfully in the highway by force of express license, apart from its rights under its franchise, may be answered in a few words. If the franchise does not carry with it the right to lay these tracks, no license granted by the engineer of highways can enlarge the plaintiff's powers. That conclusion follows as a necessary deduction from the decision in *Hatfield* v. *Straus* (*supra*). A license, moreover, even if lawful in its origin, is a revocable privilege. (*Lincoln S. D. Co.* v. *City of N. Y.*, 210 N. Y. 34; *Gushee* v. *City of N. Y.*, 42 App. Div. 37, 48.) By resolution of the board of estimate and apportionment, the plaintiff has been directed to remove the siding, and the president of the borough, under the authority of that resolution, has revoked the permit. The force of the license has thus been spent.

The question then remains whether the franchise to operate a street railroad carries with it the right to maintain spur tracks for such a purpose. We hold that it does not. We assume, as we did in *Hatfield* v. *Straus* (189 N. Y. at p. 216), that street railroads have the power to transport merchandise as well as passengers. We are concerned at this time, not with the things to be carried, but rather with the path of carriage. The statutes have surrounded the grant of franchises to street railroad corporations with many safeguards and limitations. (Constitution, art. 3, § 18; Railroad Law, L. 1890, ch. 565, art. IV, sections 90, 91, 92, 93, and amendatory statutes.) The route must be described; the consent of owners must be obtained; in default of consent, there must be an approval by commissioners appointed by the court; these and like conditions must be satisfied before a valid franchise can be obtained. To describe a route as passing along or through a stated avenue does not give notice to the public that offshoots will connect the tracks with the property of abutting owners. If the plaintiff under the franchise to maintain a railroad "across, along and upon" Nostrand avenue and other connecting streets, had the right to construct a siding between its tracks and the factory of the Arabol Manufacturing Company, it had an equal right to construct a siding between its tracks and every other factory. There would then be a network of lines that would engross the highway. It is incredible that property owners consenting to the presence of a street railroad could have contemplated the grant of such a franchise. The presence of spurs over which cars are run into a building, from which at times they suddenly emerge, is a serious obstruction to travel, and a menace often to the safety of the traveler. A railroad corporation cannot deduce from words of general or uncertain import a privilege so extraordinary. "It is elementary law that public grants must be strictly construed against the grantee." (*Lin-*

*coln Safe Deposit Co.* v. *City of N. Y.*, 210 N. Y. 34, 38.) We are not dealing here with a situation akin to the one considered in *Brooklyn Heights R. R. Co.* v. *City of Brooklyn* (152 N. Y. 244). There the spur was necessary to enable the railroad to connect with a storehouse for its cars, without which its line could not be operated at all. Undoubtedly the grant of a street railroad franchise carries with it by implication the right to maintain sidings and switches under those conditions. The point of the decision was that there was a reasonable necessity for the connecting tracks in order to permit the railroad to discharge its duties to the public. We cannot find that the use of this siding bears a relation so direct and necessary to the fulfillment of the plaintiff's functions as to bring it by fair implication within the scope of the grant.

The case of *Clarke* v. *Blackmar* (47 N. Y. 150) is without application to the facts before us. It held that under the charter of the city of Buffalo the common council had the power by apt words of grant to authorize a connection between a private grain elevator and the main tracks of a railroad. The court found that in view of the extent of the business done by the railroad as a common carrier upon the connecting line, the purpose was a public one. It was a question of the power of the common council to make the grant. It was not a question of the interpretation of a grant already made. We are not required at this time to say that a franchise which distinctly authorized the construction of sidings such as the one complained of, would be illegal. It is enough at this time for us to hold, as we do, that no such franchise has been granted.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, CHASE, COLLIN, HOGAN and MILLER, JJ., concur.

Judgment affirmed.