UNION RAILWAY COMPANY OF NEW YORK CITY, Appellant, *v.* THE CITY OF NEW YORK et al., Respondents.

Street railroads — municipal corporations — franchise to operate railroad in streets includes consent to location of sidings and connections in such streets, when reasonably necessary for the convenience of the public and in the operation of the railroad — when reasonableness and practicability of such sidings a question of fact.

1. The right to maintain sidings and switches reasonably necessary for the enjoyment of a franchise granted to a street railroad company during the entire life of the franchise is clearly implied in the franchise whether the need for such sidings is due to the original conditions or

19

to changed conditions. Changed conditions may perhaps not enlarge the original grant, but the legality of sidings and switches erected thereafter, though not included in the express terms of the original grant, depends in all cases upon whether they are reasonably necessary for the enjoyment of the original grant.

2. Plaintiff, a street surface railroad company, was granted by the city of New York the right to construct, maintain and operate certain extensions and branches of its railroad upon certain streets in the northerly part of the city. Thereupon plaintiff constructed and operated a double-track railroad upon such right of way for a number of years. ·Later a receiver of the company presented a petition to the proper authorities of the city for its consent to the construction of a temporary siding or turnout just north of its terminus. This consent was granted, subject to revocation upon thirty days' notice in writing and in no case to extend beyond a term of ten years, the plaintiff to pay a specified sum per annum as compensation for the privilege so granted. After the expiration of the ten years the plaintiff refused, and still refuses, to apply for a renewal of said consent and has paid no compensation to the city for any privilege of maintaining the siding. Thereupon, the municipal authorities adopted a resolution requiring the plaintiff to entirely remove such siding track from the street and restore the entire street and any structures therein to its original condition. Plaintiff brought this action to enjoin the enforcement of the resolution requiring the removal of the siding or turnout. The trial judge found, as matter of fact, that the siding in question is necessary for the proper operation of the plaintiff's street railroad and for the convenience of the public, and that, if the siding is removed, " it will result in an inconvenience to the public which will discourage travel upon the street railroad at that point " and also " in loss of revenue to the company which cannot be estimated." In spite of such findings, the trial justice held as matter of law that " the plaintiff has no right to maintain or operate the said siding without the express consent " of the municipal authorities, and that the defendants are entitled to judgment dismissing plaintiff's complaint. These conclusions of law and the judgment based thereon — affirmed by the Appellate Division — are not sustained by the findings of fact and must be reversed, and a new trial ordered at which the whole question of the existence of a real necessity for the siding and its extent will be open for consideration by the triers of fact, under principles of law recently laid down. (*Matter of Westchester Electric R. R. Co.* v. *City of Mount Vernon*, 237 N. Y. 199, followed.)

*Union Railway Co.* v. *City of New York*, 207 App. Div. 852, reversed.

(Argued April 15, 1924; decided May 20, 1924.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 15, 1923, unanimously affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

*Alfred T. Davison* and *Addison B. Scoville* for appellant. The Union Railway Company of New York city has the right under and incident to its franchise of December 27, 1892, to construct, maintain and operate the siding on the easterly side of Broadway just north of Two Hundred and Forty-second street. (*Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152; *Cowley* v. *Weiner*, 236 N. Y. 357; Nellis on Street Railways, § 126; *Romer* v. *St. Paul C. Ry. Co.*, 77 N. W. Rep. 825; *Wooley* v. *G. S. & N. R. R. Co.*, 83 N. Y. 121; *B. H. R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 244; *B. H. R. R. Co.* v. *Steers*, 213 N. Y. 76; *City of New York* v. *B. C. R. R. Co.*, 232 N. Y. 463; *Westchester El. R. R. Co.* v. *City of Mount Vernon*, 237 N. Y. 199.) The so-called " permit " given in 1909 to the then receiver of the Union Railway Company of New York city does not obligate said company to remove the siding. (*Carpenter* v. *Taylor*, 164 N. Y. 171; *Paige* v. *Schenectady Ry. Co.*, 178 N. Y. 102; *Matter of Woodworth*, 64 Hun, 522; *Ingersoll* v. *N. E. R. R. Co.*, 157 N. Y. 453.)

*George P. Nicholson*, Corporation Counsel (*Joseph A. Devery* and *Alexander I. Hahn* of counsel), for respondents. Appellant has neither the express nor the implied right to construct a siding 580 feet in length under its general franchise to construct and maintain a street railroad. (*Brooklyn Heights R. R. Co.* v. *City of Bklyn.*, 152 N. Y. 244; *City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463; *Matter of Westchester El. R. R. Co.* v. *City of Mt. Vernon*, 237 N. Y. 199; *B. H. R. R. Co.* v. *Steers*, 213 N. Y. 76.)

[238 N. Y. 289]     Opinion, per Lehman, J.     [May,

Lehman, J.   The plaintiff is a street surface railway corporation organized under the laws of this State.   In December, 1892, by resolution of the Board of Aldermen, approved by the Mayor of the city of New York, it was granted the right to construct, maintain and operate certain extensions and branches of its railroad upon certain streets of the city of New York including that portion of Broadway situated between Kingsbridge road and the northerly line of the city of New York.   Kingsbridge road, referred to in said resolution, is located to the south of Two Hundred and Forty-second street.   The plaintiff constructed a double-track street surface railroad on Broadway including that portion of Broadway between Two Hundred and Forty-second street and the northerly line of the city of New York.   Thereafter the city of New York constructed a rapid transit subway with a northerly terminal located at Broadway and Two Hundred and Forty-second street.   This subway began its operation on August 1, 1908.   In order to facilitate the handling of the increased traffic caused by the passengers of the subway who traveled north from its terminal by surface cars, Frederick W. Whitridge, the then receiver of the Union Railway Company of New York City, presented an application to the Board of Estimate and Apportionment of the city of New York for its consent to the construction, maintenance and use of a temporary siding or turnout on the easterly side of Broadway just north of Two Hundred and Forty-second street.   On December third the Board of Estimate and Apportionment adopted a resolution approved by the Mayor of the city of New York giving to the Union Railway Company of New York City the consent of the city of New York, subject to revocation upon thirty days' notice in writing and in no case to extend beyond a term of ten years, to the construction, maintenance and operation of a siding or turnout on Broadway just north of Two Hundred and Forty-second street. This consent required the Union Railway Company to

pay into the treasury of the city of New York, as compensation for the privilege granted, the annual sum of one hundred dollars. The Union Railway Company constructed the siding or turnout as consented to by the city and has maintained it since that time.

After the expiration of the ten-year period the plaintiff refused and still refuses to apply for renewal of said consent and has paid no compensation to the city for any privilege of maintaining the siding. On February 11, 1921, the Board of Estimate and Apportionment of the city of New York adopted a resolution directing the Union Railway Company of New York City " to entirely remove the said track from the street and restore the entire street and any structures therein to its original condition " and further directing that if the plaintiff fails or neglects to remove the said siding and restore the said street, the President of the borough of The Bronx should do so. The plaintiff does not itself operate any cars on its surface railroad or siding or turnout on Broadway north of Two Hundred and Forty-second street but has transferred the right to use the tracks of its surface railroad to the Yonkers Railroad Company.

The plaintiff has now brought this action to enjoin the enforcement of the resolution requiring the removal of the siding or turnout, claiming that the right to maintain such a siding is necessary for the operation of its railroad and the enjoyment of the franchise granted to it in 1892 and, therefore, included by implication within that franchise. All the facts hereinabove stated are undisputed and either admitted by the pleadings or conceded at the trial and embodied in appropriate findings by the trial justice. Practically all the evidence presented at the trial was intended to show the use of the siding or turnout in the operation of plaintiff's street railway in order to enable the court to determine whether such siding was necessary. After the trial the trial justice embodied in his decision the following findings of fact upon this point:

That the street railroad siding " is necessary for the proper operation of the plaintiff's street railroad    *    *    * " and " is necessary for the convenience of the public using the street railroad on Broadway at that point." He further found that the siding was " necessary " for these purposes " whether said street railroad is operated by the Union Railway Company of New York or the Yonkers Railroad Company," and that if the siding is removed, " it will result in an inconvenience to the public which will discourage travel upon the street railroad at that point," and also " in loss of revenue to the company which cannot be estimated." In spite of these findings the trial justice held that " the plaintiff has no right to maintain or operate the said siding without the express consent of the Board of Estimate and Apportionment of the city of New York " and that " the defendants are entitled to judgment dismissing the plaintiff's complaint on the merits." This decision has been unanimously affirmed and upon this appeal the only question which is open to review is whether the conclusions of law and the judgment based thereon are sustained by the findings of fact.

The theory upon which this complaint is brought is that " a franchise to operate a railroad in the streets of a city is a franchise to operate it with sidings and connections reasonably necessary to the enjoyment of the grant. The municipal authorities consent by implication to the incident in consenting to the principal." (*Matter of Westchester Electric Railroad Company* v. *City of Mt. Vernon,* 237 N. Y. 199.) The rule which the plaintiff invokes is founded upon firm authority both judicial and extra judicial, and the concrete question before us is whether the findings hereinabove set forth bring this case within the limits of that rule. The general rule has been stated by this court not only in *Matter of Westchester Electric Railroad Company* v. *City of Mount Vernon* (*supra*), but in several other cases.

In *Wooley* v. *Grand Street & Newtown R. R. Company* (83 N. Y. 121, 126) the court stated: " the defendant had the right to put down such appliances in the street as were needful for the convenient use of its franchise to operate a horse railway," but in that case the court had under consideration not so much what was included by implication in the express terms of a franchise as the manner in which the franchise should be exercised.  In *Brooklyn Heights R. R. Co.* v. *City of Brooklyn* (152 N. Y. 244, 250) the court stated: " We search, in a doubtful case of an exercise of power, not in terms conferred, for what may be deemed to be reasonably implied as a means of carrying out the powers specifically given and so as to permit of the amplest exercise thereof, which is consistent with the object and purpose of the public grant. A railroad corporation is, particularly, called upon to consult the public convenience and what is done by it in that direction should be sustained; if support for the act is possibly to be found in the law of its being.  If a reasonable necessity exists, in a proper discharge of its duties to the public, for the act complained of, that should be a sufficient answer to the complaint."  It is to be noted that in this case as well as in *Matter of Westchester Electric Railroad Co.* v. *City of Mount Vernon* (*supra*), while the rule is stated in somewhat general terms, the question actually before the court was whether a street railroad company could extend its tracks from the line which it was expressly authorized to maintain under its franchise to a car barn where its cars could be stored, and all that the court actually held was that since a street railroad could not be operated without a car barn the right to build a necessary siding to a car barn must be included in the principal grant.  These cases are authority for the rule that what is reasonably necessary for the exercise of a public·franchise is included in the franchise, but they leave untouched the question of whether the siding in the present case, provided for

the convenience of the traveling public, may be regarded as " reasonably necessary " for the exercise of the plaintiff's franchise. The limits of the application of such cases is pointed out in *Brooklyn Heights R. R. Co.* v. *Steers* (213 N. Y. 76), where this court held that though " undoubtedly the grant of a street railroad franchise carries with it by implication the right to maintain sidings and switches " necessary to enable the railroad to connect with a storehouse for its cars, without which its line could not be operated at all, it does not carry with it a right to maintain a spur to a factory along its line, and after that decision was made this court in *City of New York* v. *Brooklyn City R. R. Co.* (232 N. Y. 463) laid down the rule in its limited form, " the grant of a street railroad franchise carries with it by implication the right to maintain sidings and switches and a spur necessary to enable a railroad to connect with a storehouse for its cars without which the line could not be operated."

In the present case the line was operated for many years without a siding at Two Hundred and Forty-second street and the findings show no need for a siding till the opening of the subway sixteen years after the franchise is granted. It is urged that a franchise can include by implication the right to do such things only as were within the contemplation of the grantor at the time the franchise was granted and that the grantor could not have contemplated the need of an additional siding due to change of conditions thereafter. The plaintiff's franchise was not limited to a user during the continuance of the then existing conditions and the grantor must have contemplated that the railroad would continue to be operated even though such conditions should change. Indeed in *Matter of Westchester E. R. R. Co.* v. *City of Mt. Vernon* (*supra*) this court held that a siding for a new car barn might be " reasonably necessary " and, therefore, by implication within the grant of the principal franchise though such need was caused by the fact that " in 1922

the car barn then in use for many years was found to be inadequate." The right to maintain sidings and switches " reasonably necessary " for the enjoyment of the franchise granted, during the entire life of the franchise, is clearly implied in the franchise whether the need for such sidings and switches is due to the original conditions or to changed conditions. Changed conditions may perhaps not enlarge the original grant, but the legality of sidings and switches erected thereafter, though not included in the express terms of the original grant, depends in all cases upon whether they are reasonably necessary for the enjoyment of the original grant.

The plaintiff is enjoying a public grant and, like other public grants, such a grant should be construed strictly where the grantee is claiming rights thereunder for its own benefit; but since the grant is " also for the express accommodation and benefit of the public, everything which is reasonably proper and necessary (not simply convenient) to effect the essential objects of the grant, passes by necessary implication. Otherwise the purpose of the grant would be seriously impaired if not wholly defeated." (*Romer* v. *St. Paul City Ry. Co.,* 75 Minn. 211.) Undoubtedly it is often difficult to draw a line of demarcation between those cases where a switch or siding is reasonably necessary for the operation of the railroad and to enable the railroad to serve the public convenience, and those cases where the switch or siding is merely a convenience for the company in the operation of the railroad. Especially is this true where as here the existence of the switch or siding, which it is found results in increased travel upon the street railroad, presumably results also in increased profits to the railroad. Whether an extension is a necessary incident to the principal subject of the grant is a question of fact and the burden of its proof rests upon the plaintiff. (See *People* v. *Third Ave. R. R. Co.,* 45 Barb. 63, opinion by PECKHAM, J.) Mere convenience or increase of profits

to the railroad company may be irrelevant and mere increased convenience to the public may not be decisive for the proof must show such necessity for the existence of the switch, siding or extension; and such diminution, by its absence, of the enjoyment by the railroad company of its franchise and of its power to serve the convenience of the public as to make the right to construct the switch logically and reasonably a mere incident to the principal franchise. We cannot upon this appeal pass upon the question of fact litigated at the trial. The trial justice has found that the siding is " necessary for the convenience of the public using the street railroad." Even though we should hold that the conclusions embodied in these findings may be reviewed here in so .far as they rest upon other findings (*Smyth* v. *Brooklyn Union El. Ry. Co.*, 193 N. Y. 335; *Matter of Thompson*, 217 N. Y. 111) yet it does not appear that as a matter of law such a conclusion is erroneous. The findings state that practically all the subway passengers board street surface railway cars at the terminal and that in order to handle such increased traffic it became necessary to operate certain cars on the street surface railway on Broadway only as far south as Two Hundred and Forty-second street so as to turn said cars back at that point to take care of the subway passengers desiring to use said street surface railway to points north of said subway terminal. The plaintiff's franchise contains a provision that the cars on its railway " shall be run as often as the convenience of the public may require." In view of these considerations we cannot say that the conclusion that the siding is necessary for the proper operation of the plaintiff's railway is not justified and from that conclusion it must follow that the right to maintain the siding is a mere incident of the original franchise.

Stress is laid by the city .upon the fact that the siding was originally constructed by the receiver with the consent of the city granted for a limited period upon the appli-

cation of the receiver. These circumstances may constitute an admission by the receiver that the right to construct the siding was a new privilege and not an incident of the old franchise, but like other admissions it is not conclusive. It may be that the receiver merely decided that it was better policy to ask a privilege than to demand a right, but in any event it constitutes at most evidence, the force of which we cannot consider when opposed to a finding which has been unanimously affirmed. It may be that the plaintiff has in effect made an agreement to remove the siding at the expiration of the consent, but if the siding is lawfully there the city may not remove it, in spite of this agreement. It is further urged that even though the maintenance of the siding is necessary yet it incumbers the streets and the street railway should pay for its use of the street. Of course if the maintenance of the siding depends upon the city's consent, that consent may be granted upon such terms as to compensation as the city deems fair, but if it is included in the original franchise the compensation paid for that franchise necessarily includes compensation for all rights included in the franchise. Finally, the city urges that since the plaintiff itself operated no cars on its railroad it cannot claim that the siding is necessary for the enjoyment of its franchise. That contention, however, is met by the finding that the siding is necessary " for the proper operation of the plaintiff's street railway whether said railroad is operated by the Union Railway Company of New York City itself or by the Yonkers Railroad Company."

While we are of the opinion that the findings of fact do not support the conclusion of law that the plaintiff has no right under its franchise to maintain and operate the siding and that the complaint should be dismissed, yet we do not upon this appeal determine that these findings establish that the plaintiff has a right to maintain the siding *in its full present length.* The findings do not

in terms set forth the length of the siding, but merely identify it as the siding constructed with the consent of the city of New York given in December, 1909. By. reference to that consent we find that the siding is 580 feet long. There may be a question whether under the circumstances set forth in the other findings a siding of such length can be regarded as " necessary " for the operation of a street railway. If a siding of such length is necessary only for storage of cars, the railway should procure storage facilities elsewhere. It cannot engross the highway for such purpose. There should be a new trial at which the whole question of the existence of a real necessity and its extent will be open for consideration of the trier of facts in accordance with the principles we have recently laid down in *Matter of Westchester Electric Railroad Company* v. *Mount Vernon (supra)*.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Hiscock, Ch. J., Cardozo and McLaughlin, JJ., concur; Pound, Crane and Andrews, JJ., dissent.

Judgments reversed, etc.