PORTER B. TUTTLE, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 13,790.

Court of Claims, September 2, 1930.

*Russell S. Johnson,* for the claimant.

*Hamilton Ward, Attorney-General [John L. Campbell, Deputy Assistant Attorney-General,* of counsel], for the State of New York.

RYAN, J.   This claim, filed January 12, 1916, and tried January 7, 1930, asks for damages for loss of land by erosion and damages to other acreage for preventing its overflow and consequent fertilization together with interest on the amount of damages for the six months prior to the date of filing.   The claim is based upon the acts of the State in altering the course and channel of Wood creek.   After the claim was filed and prior to the trial and under date of December 15, 1924, claimant was served with an appropriation map, a certified copy of which is in evidence.   The State has paid him for said appropriation an agreed sum which he has accepted.   The record does not show how much was paid nor what agreement, release or satisfaction, if any, was signed by claimant at the time he received the money.   If any release was signed it was not produced on the trial.   If it ever existed it is apparently lost.   The only question to be determined is whether or not claimant can recover damages incurred prior to the appropriation. That determination must be made upon the recitation appearing upon the appropriation map (Exhibit A) under the heading, " Description of the Interest, Easement and Estate to be Appropriated," which we hereby quote in full:

" The necessary result of the construction and maintenance of the improved canal in the neighborhood of the above described lands has been or will be to lower the elevation of the bed of Wood Creek and the elevation of the water flowing therein, and in turn to so increase the velocity of the water flowing therein as to erode and wash or wear away a part or the whole of the above described lands, thus widening the channel and to some extent changing the course of Wood Creek and incidentally destroying trees and crops on the above described lands, rendering the upland adjacent to Wood Creek more difficult of access, draining the subsoil water below the reach of plants, denying the land whatever benefits might have been derived from the spring floods, and otherwise diminishing the value of said lands.   The necessary result of said work has been or will be to turn canal water, both by seepage through the banks of the canal and by overflow of the spillway, into ditches that cross the above described lands.

" As a result parts or the whole of the above described lands are or will be overflowed by the waters from said ditches, the crops destroyed and portions or the whole thereof eroded, worn or washed away, or so damaged that the land is useless for either tillage or pasture.   Portions or the whole thereof may become difficult of access, and certain buildings included within the above limits may become flooded and the foundations thereof damaged, all of which will result in diminishing the value of said lands and

buildings. In order to avoid a condition where the owner of said premises may file recurring claims against the State for damage to said property, resulting or arising from the aforesaid facts or conditions, the State hereby appropriates the right to perpetually maintain the canal structures, works or conditions which shall or may occasion or bring about the conditions above referred to, whatever effect the same may have on the quantity or velocity of water flowing in said creek and ditches, or on the elevations of water flowing therein, or on the erosion, washing or wearing away of the banks of said creek or ditches or property above described, and in general, whatever effects the same may have upon the lands above described, all to the end that when the value of the land, or interest in lands above described, is paid by the State to the owners of the fee of said land, the State will be immune from any and all further claims of the character above described."

The State contends that by accepting payment under this language claimant has fully released his claim for damages whether incurred prior to or after the appropriation. The Attorney-General cites no authorities in support of this theory but argues in his brief that "The fact that this particular claim was filed before the appropriation does not alter the situation so long as the State included in the appropriation map all the past as well as future damages."

Can the language quoted be so construed?

In *Renwick* v. *New York Elevated Railroad Co.* (59 N. Y. Super. Ct. 591) plaintiff asked for injunctive relief and for recovery of past damages. Pending the action and prior to the trial defendant instituted condemnation proceedings and paid plaintiff his prospective damages therein awarded. It was held that the right of the plaintiff to recover his past damages could not be defeated by proof that during the pendency of the action defendant had satisfied his claim in part.

In *Grote* v. *City of New York* (128 App. Div. 885) it was held that the acceptance of the principal sum of an award for taking land did not bar plaintiff's right to recover interest upon said award where it was agreed that the claim for interest should be reserved and settled by an action to be brought therefor and the Court of Appeals had found that plaintiff was entitled to interest not by reason of the contract but simply as damages on account of the default of the defendant in paying the award when due (190 N. Y. 235).

In *Judge* v. *New York Central & H. R. R. R. Co.* (56 Hun, 60), which was an action in ejectment for the recovery of the possession of land and damages for withholding the same, the city of Albany

undertook under act of the Legislature to save the defendant harmless from claims for compensation by an adjoining property owner for damages which accrued by reason of change of grade of the street. The plaintiff presented his claim to the city, obtained and accepted an award therefor and executed a release. The court held that he had been fully compensated for all damages to his adjoining lot. However, the defendant, pending the action, had instituted and prosecuted to a determination the necessary proceedings for condemnation of the plaintiff's title to the street and the court held that plaintiff could recover damages, nominal in amount, which accrued for withholding the *locus in quo* from the time of defendant's entry to the time of the award by the commissioners of appraisal.

In *Smyth* v. *Brooklyn Union Elevated Railroad Co.* (193 N. Y. 335) there was an express agreement under seal, executed by plaintiff's grantor, which recited: " And the party of the first part for itself, its successors and assigns, hereby releases and discharges the party of the second part, its successors and assigns, from any and all claims and demands for any such compensation arising from or connected with such maintenance of said structure, and the operation of its railroad, as now constructed and operated." The court said: " What the plaintiff's predecessor intended to release was the right to compensation not merely for any past entry, but for the acquisition of its property rights for the railroad company which would otherwise be compelled to institute condemnation proceedings to ascertain the amount of that compensation. Assuming, but not conceding, that the instrument would be inoperative as a grant certainly it was effective as an estoppel for any compensation that might be awarded in condemnation proceedings." The court modified the judgment and reduced the award of damages, striking out any damages incurred to the piece of property described in the release.

From the foregoing cases we reach the conclusion that the exercise of the right of eminent domain does not cut off the owner's claim for damages already accrued nor for interest thereon but that he can expressly release such claim.

Mr. Tuttle's claim accrued in 1915 and was filed within six months as required by statute. It was a chose in action, a definite vested right to recover damages against the State. (*Weismantle* v. *State*, 210 App. Div. 608.) He could release it. The burden was on the State to show that he did so, expressly, for a good and valuable consideration. The State has failed to meet this burden.

The claim should be allowed, with interest.

BARRETT, P. J., concurs.