WILLIAM R. HEARST, Appellant, v. JOHN L. SHEA, Commissioner of Bridges of the City of New York, THE MUNICIPAL ASSEMBLY OF THE CITY OF NEW YORK, and WILLIAM BERRI and Others, Constituting the Trustees of the New York and Brooklyn Bridge, Respondents.

1. APPEAL — CERTIFIED QUESTION — ABSTRACT PROPOSITION. The rule applied, that when a question certified by the Appellate Division presents merely an abstract proposition, and no facts are disclosed in the record which show that it arose in the case, the Court of Appeals will decline to answer it.

2. NEW YORK AND BROOKLYN BRIDGE — USE BY RAILROAD CORPORATIONS — POWERS OF BRIDGE TRUSTEES. Under section 4 of chapter 663 of Laws of 1897, the trustees of the New York and Brooklyn Bridge had the right to provide plans and specifications regulating the operation across the bridge of the cars of railroad corporations, which were not in conformity with the plans and specifications recommended by the expert engineer mentioned in that act, if the trustees deemed their own plans best adapted to promote the public comfort and convenience, and to subserve the purposes for which the bridge was constructed.

3. FOOT PASSAGEWAY ON BRIDGE — NEW YORK CHARTER. If section 598 of the charter of the city of New York (L. 1897, ch. 378), which declares that the passageway of the New York and Brooklyn Bridge "now set apart for foot passengers shall remain free and open to all pedestrians coming and going at all times," is inconsistent with the provisions of chapter 663 of Laws of 1897, empowering the bridge trustees to regulate the operation across the bridge of cars of railroad corporations, the former must be regarded as repealed *pro tanto* by necessary implication.

4. RAILROAD TERMINAL UPON FOOT PASSAGEWAY. The trustees of the New York and Brooklyn Bridge have the right to construct or permit the construction, at the western terminus of the bridge, of a terminal for the

railroads of corporations, on the level or surface of the bridge, and upon and across the passageway of the bridge set apart for foot passengers and thereby obstruct such foot passageway.

*Hearst* v. *Berri*, 24 App. Div. 73; 25 App. Div. 624, affirmed.

(Argued April 18, 1898; decided June 7, 1898.)

APPEAL, by certification, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1897, as amended by an order entered January 14, 1898, reversing an order of the Special Term continuing an injunction during the pendency of this action.

The injunction was originally granted by Mr. Justice GIEGE-RICH restraining the trustees of the New York and Brooklyn bridge from further prosecuting the work of erecting or laying loops or tracks for the use of electric trolley railways aross the passageway for foot travelers, which was in progress. at the New York terminus.

The grounds alleged in the complaint for relief by injunction were that the defendants were about to or were tearing up a portion of the roadway upon the bridge to erect four loops or tracks to be used by electric trolley passenger cars; that such tracks were to be erected on grade across the passageway used by pedestrians; that the tracks were being laid in pursuance of an agreement with certain electric railway companies; that by the agreement between such companies and the trustees of the bridge subways were to be constructed under such loops or tracks for ingress or egress of passengers crossing other than by trolley cars; that the trustees were intending to omit the construction of such subways, compelling passengers. to cross upon such loops or tracks at grade; that if built without the subways it would endanger the lives of those passing over the tracks to the injury, detriment and loss of the taxpayers and residents of the cities of New York and Brooklyn; that the trustees were required by law to keep and maintain the bridge as a public highway, to render travel thereon safe, and that, unless restrained from continuing such work in that manner, it would result in waste and injury to the bridge

and in a menace to the lives of the inhabitants, for which there would be no adequate remedy at law. The relief demanded is that the trustees and other defendants be restrained from further prosecuting the work in the manner stated in the complaint.

Thus the whole theory of the complaint and practically the only illegality complained of is the omission or threatened omission of the subways under the tracks or loops upon the passageway for pedestrians. It is not alleged or claimed that the laying of the tracks or loops upon the bridge is illegal, nor that the law authorizing it is for any reason invalid. The right to enjoin the trustees from continuing the work upon the bridge is based solely upon the ground that the trustees intend to build the loops or tracks across the passageway without any subway under them for the safety of pedestrians.

The Special Term, however, seems to have continued the injunction upon the ground that the trustees could only build or permit the railroad companies to build loops or tracks in substantial conformity with the plans recommended by the board of experts referred to in chapter 663 of the Laws of 1897, and that the trustees could only change the manner of construction in minor details.

The statute adverted to, so far as material, is as follows: Section one authorizes the trustees to abolish all fares upon the railways of said bridge, except as afterwards provided. Section two in effect declares that the trustees may continue to maintain and operate the present railroad and charge fares for the carriage of passengers, but not in excess of the present rate. Section three authorizes the trustees to contract with any surface or elevated railroad operating its roads either in the city of New York or Brooklyn, permitting its or their carriage of passengers across the bridge, but without any additional charge for fare and with authority in the trustees to charge the corporation for each car crossing the bridge. Then follows section four, which provides: "Within sixty days after the passage of this act, the said trustees shall prepare plans and specifications regulating the operation over

said bridge of the cars of such corporation or corporations with whom it may contract, as such trustees shall deem best adapted to promote the public comfort and convenience and to subserve the purposes for which said bridge was constructed and, except as otherwise provided by said trustees, such plans and specifications shall be in substantial conformity with the plans recommended to the said trustees by Virgil G. Bogue, George H. Thompson and Leffert L. Buck, expert engineers, by their report bearing date February eighth, eighteen hundred and ninety-seven. And said trustees shall also prepare such form of contracts and specifications thereunder as they shall deem best fitted for the public interests, regulating the operation of the said cars of the said corporation or corporations and the establishment of its route or their route upon said bridge, and shall have power to exact such bond or obligation as they may deem proper for the faithful performance of any contract or contracts made with any and all of said corporations, as aforesaid." Section five repeals all acts and parts of acts inconsistent with this act, and section six provides that the act shall take effect immediately. That act was passed May 22, 1897.

Section 598 of the charter of the city of New York, which was passed May 4, 1897, provides : " The New York and Brooklyn bridge is hereby declared to be a public highway for the purpose of rendering travel between the boroughs of Manhattan and Brooklyn certain and safe at all times, subject to such tolls and prudential and police regulations as the municipal assembly shall adopt and prescribe ; provided, however, that the passageway of the bridge now set apart for foot passengers shall remain free and open to all pedestrians coming or going at all times."

The defendants appealed from the order of the Special Term to the Appellate Division, which reversed the Special Term and held that the trustees, under and by virtue of section four of chapter 663, of the Laws of 1897, had authority to make such plans, specifications and regulations regulating the operation of cars of the corporation with which it should

contract, as they deemed best adapted to promote the public comfort and convenience, although they were not in strict or substantial conformity with the plans recommended by the expert engineers named. The decision of the Appellate Division was by a divided court, and in the order reversing the judgment of the Special Term it was stated, "That this order of reversal and the dissolution of the said order of injunction is made as a matter of right and not as a matter of discretion."

That court also allowed an appeal to this court, and certified that the following questions of law had arisen upon the appeal herein, which, in its opinion, ought to be reviewed by the Court of Appeals:

"1. Were the trustees of the New York and Brooklyn bridge authorized and empowered by law to provide for and permit railroad companies to enter upon and construct their railroads upon and cross the bridge with their cars?

"2. Have the said trustees the right to construct or permit the construction, at the western terminus of the New York and Brooklyn bridge, of a terminal for such railroads on the level or surface of the said bridge, and upon and across the passageway of the bridge set apart for foot passengers and thereby obstruct such foot passageway?"

*B. F. Einstein* for appellant. The trustees of the bridge have not the right to construct or permit the construction, at the western or New York terminus of the bridge, of railway tracks on the level or surface of the promenade or entrance to the bridge and upon and across the passageway of such promenade or entrance set apart for pedestrians. (Ch. 663, L. 1897, § 4; *Heckmann* v. *Pinkney,* 81 N. Y. 211; *People ex rel.* v. *McClave,* 99 N. Y. 83; *People ex rel.* v. *Lacombe,* 99 N. Y. 43; *Matter of N. Y. & Brooklyn Bridge,* 72 N. Y. 527; 23 Am. & Eng. Ency. of Law, 309; *Matter of Folsom,* 56 N. Y. 60; *People* v. *N. Y. & M. B. R. Co.,* 84 N. Y. 565; *People ex rel.* v. *Bd. Suprs.,* 70 N. Y. 228; L. 1875, ch. 300, § 7; Consol. Act, §§ 1978–1980; *People* v.

*Gold & Stock Tel. Co.*, 98 N. Y. 67; *People's R. T. Co.* v. *Dash*, 125 N. Y. 93; L. 1874, ch. 601, § 3.)

*James C. Bergen* for respondents. The questions certified by the Appellate Division to the Court of Appeals are both open to all of the objections pointed out by the Court of Appeals in its recent decision of *Grannan* v. *Westchester Racing Association* (153 N. Y. 449). (*Havermeyer* v. *Iowa Co.*, 3 Wall. [U. S.] 294–303; Code Civ. Pro., § 1925; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Rogers* v. *O'Brien*, 153 N. Y. 357; *Enfield* v. *Jordan*, 119 U. S. 680.) The first question certified to this court by the Appellate Division must be answered "Yes." (L. 1867, ch. 399; L. 1869, ch. 26; L. 1874, ch. 601; L. 1875, ch. 300; L. 1891, ch. 128; L. 1893, ch. 278; L. 1897, ch. 663; L. 1891, ch. 332; *People ex rel.* v. *Kelly*, 76 N. Y. 475; *Walsh* v. *Mayor, etc.*, 107 N. Y. 220; Const. art. 3, § 18; *Sun Pub. Assn.* v. *Mayor, etc.*, 152 N. Y. 257, 272; *People ex rel.* v. *Comrs. of Taxes*, 47 N. Y. 501; *Matter of Mayer*, 50 N. Y. 504; *People ex rel.* v. *Briggs*, 50 N. Y. 553; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Matter of N. Y. & L. I. B. Co.*, 148 N. Y. 540, 551; 54 Hun, 400; *Matter of G. El. R. Co.*, 70 N. Y. 361; *Astor* v. *Arcade R. Co.*, 113 N. Y. 93.) The second question certified to this court by the Appellate Division must be answered "Yes." (*Taggart* v. *Murray*, 53 N. Y. 233; *People ex rel.* v. *Lacombe*, 99 N. Y. 43; *People ex rel.* v. *McClave*, 99 N. Y. 83; *Ottendorfer* v. *Agnew*, 13 Daly, 16; L. 1886, ch. 4; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Rogers* v. *O'Brien*, 153 N. Y. 357; *Heil* v. *City of New York*, N. Y. L. J., Feb. 7, 1898.) The order of the Appellate Division dissolving and refusing a temporary injunction during pendency of this action, is not reviewable in the Court of Appeals. (*People* v. *Schoonmaker*, 50 N. Y. 499; *New Haven Web Co.* v. *Ferris*, 115 N. Y. 641; *McHenry* v. *Jewett*, 90 N. Y. 58.) There is no provision of law authorizing the granting of a temporary injunction in a taxpayer's action. (Code Civ. Pro. §§ 602, 603, 604, subds. 1, 2.)

*Charles A. Collin* and *William F. Sheehan* for " Associated Trolley Companies." The bridge authorities have the right, in the *bona fide* exercise of their judgment and discretion, to require foot passengers to take either one of the three floors of the New York terminal depot, as a passageway through the bridge depot between the bridge footpath and the side- walks on Park Row; and so long as any one of the three passage- ways thus offered is free, safe and reasonably accessible, the action of the bridge authorities, in relation thereto, is not reviewable by the courts. (L. 1867, ch. 399; L. 1869, ch. 26; L. 1870, ch. 246, § 3; L. 1874, ch. 601; L. 1875, ch. 300; L. 1877, ch. 165; L. 1880, ch. 105; L. 1882, ch. 368; L. 1882, ch. 410 [N. Y. City Consol. Act], §§ 1978–1982; L. 1883, ch. 228; L. 1886, ch. 4; L. 1887, ch. 192; L. 1887, ch. 563; L. 1891, ch. 128; L. 1891, ch. 248; L. 1891, ch. 332; L. 1892, ch. 76; L. 1893, ch. 278; L. 1894, ch. 710; L. 1896, ch. 87; L. 1897, ch. 378 [Greater New York Charter, §§ 273–276, 314, 594–601, 1536]; L. 1897, ch. 603; *Clark* v. *Lord*, 20 Kans. 390, 396; Stat. Const. Law [L. 1892, ch. 677], § 9; *Thacher* v. *Suprs. of Steuben Co.*, 21 Misc. Rep. 271, 278, 279; *People* v. *England*, 91 Hun, 152; *Lazarus* v. *M. E. R. Co.*, 145 N. Y. 581.) The legislation authorizing the construction and operation of railroad tracks across the bridge is constitu- tional. (*Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327, 337, 338; *Matter of Gilbert El. R. Co.*, 70 N. Y. 361, 368, 369; *Astor* v. *Arcade R. Co.*, 113 N. Y. 113; 48 Hun, 570; *Peo- ple ex rel.* v. *Carson*, 10 Misc. Rep. 237, 246; *Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540; *People ex rel.* v. *Kelly*, 76 N. Y. 475; *Sun Pub. Assn.* v. *Mayor, etc.*, 152 N. Y. 272.) The plaintiff's complaint fails to allege his capacity and quali- fications to maintain this action under the Taxpayers' Acts. (Code Civ. Pro. § 1925.) The questions certified are not such as should be answered by this court. (*Cross* v. *Evans*, 167 U. S. 60; *Warner* v. *New Orleans*, 167 U. S. 467.)

*William Williams, William B. Anderson* and *James W. Eaton* for Thomas E. Stillman. No law authorizes the lay-

ing down of railroad tracks in the roadways of the bridge. (L. 1867, ch. 399; L. 1869, ch. 26; L. 1874, ch. 601; *Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194; L. 1875, ch. 300; Consol. Act, § 1980; *Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327, 338; *Matter of Third Ave. R. R. Co.*, 121 N. Y. 536; *Matter of N. Y. & L. I. Bridge Co.*, 54 Hun, 400; 148 N. Y. 540, 551; L. 1897, ch. 663.) The trolley railroad could not be constructed under any general law. (Const. art. 3, § 18; art. 4 of the Railroad Law, 3 Birdseye's R. S. [2d ed.] 2559; L. 1874, ch. 601, § 5; Consol. Act, § 1978; Greater New York Charter, § 598; L. 1893, ch. 225.) The laws relating specifically to the bridge are local. (*People ex rel.* v. *Suprs. of Chautauqua*, 43 N. Y. 10; *People ex rel.* v. *Loew*, 102 N. Y. 471; *Ferguson* v. *Ross*, 126 N. Y. 459, 464.)

MARTIN, J. The inquiry is presented at the outset whether the questions certified by the Appellate Division are properly before us for determination. In *Grannan* v. *Westchester Racing Assn.* (153 N. Y. 449) this court held that if a question certified is stated in terms so broad that it will admit of one answer under one set of circumstances and a different answer under another, or if it presents merely an abstract proposition, and no facts are disclosed in the record which show that it arose in the case, it will decline to answer it. In the case of *Baxter* v. *McDonnell* (154 N. Y. 432, 436) the doctrine of that case was reaffirmed and it was said: " While we are confined to the question certified, it is our duty to examine the record not only to see that it actually arose, but also to see how it arose, so that we can decide it as it was presented to the courts below. In other words, we should ascertain all the facts that raise the question, so that it can be decided as an existing issue between the parties and the danger of passing upon merely abstract propositions may thus be avoided." Testing the first question certified by these rules it becomes obvious that it is not involved in the case before us. In substance the question is whether the trustees of the

New York and Brooklyn bridge were authorized to permit railroad companies to enter and construct their railroads upon and cross the bridge with their cars. No such question is involved in the present controversy. The right to make the contract entered into between the trustees and the railroad corporations was not challeged but conceded. This action was not based upon its illegality or a want of authority in the trustees, but upon an affirmance of the contract, and the relief sought was to prevent the defendants from disregarding it by building otherwise than in accordance with its provisions.

Therefore, the first question presents merely an abstract proposition, and no facts are disclosed in the record which show that it arose in the case. The doctrine of the cases cited requires this court to decline to answer it. It is quite manifest that the question thus certified does not relate to this case, but to another between the defendants and different plaintiffs. As the decision of that question does not properly arise, the consideration of it should be postponed until we have a case before us requiring its determination. That question was not even passed upon by the court below, which is another reason why it should not be here considered.

This brings us to the consideration of the second question. While it is doubtful if that question presents any proposition which was in issue between the parties, still, as it was decided by the Appellate Division, and was made the basis of the order appealed from, it is perhaps proper that it should be considered at this time. That question involves the construction of section four of chapter 663 of the Laws of 1897, and an examination of the provisions of section 598 of the charter of the city of New York, to determine whether it affects or in any way controls the provisions of the former statute. The first proposition to be considered then is whether, under section four, the trustees of the New York and Brooklyn bridge had the right to prepare plans and specifications regulating the operation over the bridge of the cars of the corporations referred to therein, where they were different from or in con-

23

flict with the plans recommended by the expert engineers mentioned in that act. By the original contract the tracks across the bridge were to be constructed in substantial conformity with the plans recommended to the trustees by the engineers. On the twenty-ninth of September a new contract was made which was supplemental to that. By the latter the original plans were modified. The elevated structures for bringing the tracks crossing the bridge into the station at the New York terminus were dispensed with, and the tracks were to enter the station or terminus on the roadway, and were to be connected by curves or loop tracks upon the surface of the approach crossing the passageway used by pedestrians. The contract also provided that there should be constructed under the loops or tracks subways by which passengers might, if they desired, pass beneath, instead of waiting while the cars were crossing the passageway.

It is said by the learned Appellate Division that it was this proposed construction and operation of the tracks and cars which the injunction order restrained. This is true, although the complaint asked for no such relief. The only relief asked in the complaint is that the trustees be required to construct the tracks according to their contract by providing tunnels or subways. Without considering the question whether the learned Appellate Division and the learned judge at the Special Term properly changed the claim of the plaintiff from that alleged in the complaint to that stated in the injunction, we will consider the question determined by the Appellate Division. First, then, did chapter 663 of the Laws of 1897 confer upon the trustees power to provide plans and specifications relating to this subject, which were not in substantial conformity with the plans recommended by the expert engineers? As we have seen, the variation between the plans recommended and those specified in the contracts lies chiefly in the change by which the loops or tracks pass over the passageway for pedestrians at grade, instead of crossing upon an elevated structure above such passageway. Section four of that statute confers upon the trustees the right and imposes

upon them the duty to prepare plans and specifications regulating the operation of cars upon the bridge. It empowers them to prepare such plans and specifications as they shall deem best adapted to promote the public comfort and convenience, and to subserve the purposes for which the bridge was constructed. It then declares that, *except as otherwise provided by the trustees*, the plans and specifications shall be in substantial conformity with those recommended by the engineers. Here is an express provision conferring upon the trustees the absolute right to make such plans and specifications as they shall deem best adapted to the purposes for which the bridge was constructed. The only limitation upon that power is that the prepared plans shall be in substantial conformity with those of the engineers. But to that limitation there is an express exception as to matters which shall be otherwise provided in the plans and specifications prepared by them. This exception is unlimited and includes the right to vary the plans recommended, as shall be otherwise provided by the trustees. The limitation is modified by the exception. The limitation is that it shall be in conformity with the plans recommended, while the exception in effect provides that the limitation shall not be effective where the trustees provide otherwise. Thus, it is obvious that the legislature intended to confer upon the trustees the absolute right to make such plans and specifications as they deemed best, but that they should be in substantial conformity with the plans recommended, unless the trustees should provide otherwise. Hence, the statute conferred upon them the right to provide plans which were not in conformity with the plans and specifications of the engineers, if they deemed such plans best adapted to promote the public comfort and convenience, and to subserve the purposes for which the bridge was constructed. If they were not in conformity with the plans of the engineers, still, if they were the plans of the trustees, they were to control. If, however, the plans of the trustees were in conformity with the plans recommended, the latter were to be made a part of the contract. We are, therefore, of the

opinion that the Appellate Division construed this statute correctly, and properly held that under it the trustees had a right to make the contract and the plans and specifications made to carry it into operation, and that the injunction was properly vacated.

But it is said that section 598 of the charter of the city of New York, which declares that the passageway of the bridge now set apart for foot passengers shall remain free and open to all pedestrians going and coming at all times, should be read and construed in connection with the statute we have already considered. The purpose of that provision of the statute was to establish a department of bridges, to provide for the appointment of a commissioner, to define his authority, and to declare the Brooklyn bridge a public highway. It also authorized the municipal assembly to adopt tolls, prudential and police regulations in regard thereto, subject, however, to the express provision that the passageway of the bridge should be free and open to pedestrians coming and going at all times, thus prohibiting the municipal assembly from interfering with the bridge in that respect. The object of that statute was not to establish the rights of pedestrians on the bridge, or to insure the continuance of that right, or to interfere with the general powers and duties of the commissioner or trustees of the New York and Brooklyn bridge. But its obvious purpose was to forbid the making by the municipal assembly of any regulations which should prevent the free and open use by pedestrians of the passageway now set apart for foot passengers. This is rendered quite obvious when we remember that sixteen days after the passage of that act, chapter 663 was enacted, which conferred upon the trustees the powers and imposed upon them the duties to which we have adverted. That was the latest statute upon the subject, and evidently was intended to cover the whole subject, and to furnish the only law upon it. Hence, if the contention of the appellant, that the provisions of section 598 are inconsistent with the provisions of chapter 663, were correct, the former must be regarded as repealed by necessary implication, so far as it is not

in harmony with the provisions of the latter. (*Heckmann
v. Pinkney,* 81 N. Y. 211.)

It follows that the order of the Appellate Division should
be affirmed, the second question answered in the affirmative,
and the first question should not be answered.

All concur.

Order affirmed.