THE CITY OF NEW YORK, Appellant, v. BROOKLYN CITY
RAILROAD COMPANY, Respondent.

Municipal corporations — New York city — railroads — constitutional law — railroads and bridges may be constructed and operated by city — authority of city of New York to construct and operate railroad over Williamsburg bridge, erect barn thereunder and connect same by trackage with tracks on bridge — when neither certificate of public convenience and necessity nor permission of public service commission required.

1. Common highways have always been regarded as under the special care, supervision and control of municipal governments and their construction and maintenance are clearly within the provisions of the Constitution, a city purpose. It follows that railroads and bridges which serve the same purposes as common highways may, under legislative authority, be constructed and operated by a city.

2. Under the provisions of section 7 of chapter 789 of the Laws of 1895, as amended by chapter 612 of the Laws of 1896, the Williamsburg bridge commission was vested with power to operate and authorize to be operated a railroad over said bridge. By subdivision 5 of section 595 of the charter of the city of New York, as amended by chapter 466 of the Laws of 1901, this power was duly transferred to the city of New York to be exercised by the commissioner of bridges, and by chapter 528 of the Laws of 1916 the exercise of said power was devolved upon the commissioner of plant and structures of the city of New York. No legislative action has limited the power so delegated or affected the franchise granted. The city of New York, therefore, through its commissioner of plant and structures has an existing right and franchise to operate or cause to be operated a railroad on the Williamsburg bridge.

3. The grant of a street railroad franchise carries with it by implication the right to maintain sidings and switches and a spur necessary to enable a railroad to connect with a storehouse for its cars, without which the line could not be operated. The city of New York, having the right to operate a railroad over the Williamsburg bridge, may erect a barn underneath the structure thereof and by necessary trackage connect the existing bridge tracks with the barn. If in the course of making this connection it is necessary to cross over the tracks of another railway the law makes provision therefor.

4. In order to operate the railroad and to construct the necessary trackage, no certificate of public convenience and necessity nor per-

mission of the public service commission is required. The city's authority comes direct from the legislature, which has the power to grant to a municipal corporation the right to operate a railroad. Convenience and necessity and permission were all decreed by legislative fiat, which the public service commission may not veto. (*Sun Printing & Pub. Assn.* v. *Mayor, etc., of N. Y.*, 152 N. Y. 257, 267, followed.)

*City of New York* v. *Brooklyn City Railroad Co.*, 198 App. Div. 737, reversed.

(Argued January 11, 1922; decided February 3, 1922.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 25, 1921, which reversed an order of Special Term appointing commissioners to determine the amount of compensation, if any, to be awarded the defendant as a condition of constructing a cross-over on its tracks, and also reversed an order of said Special Term confirming the report of said commissioners.

*John P. O'Brien,* Corporation Counsel (*William B. Carswell* of counsel), for appellant. The city of New York is authorized by statute to operate a railroad on the Williamsburg bridge, and the connecting track, with the cross-over involved herein, is a mere incident thereto. (*City of New York* v. *Brooklyn City R. R. Co.*, 115 Misc. Rep. 94; *Schinzel* v. *Best*, 45 Misc. Rep. 455; 109 App. Div. 917; *People ex rel. McCarthy* v. *Shea*, 51 App. Div. 227; 164 N. Y. 573; *Gordon* v. *Strong*, 3 App. Div. 395; *Knowles* v. *City of New York*, 176 N. Y. 430; *Bank of Metropolis* v. *Faber*, 150 N. Y. 200; *B. H. Ry. Co.* v. *City of Brooklyn*, 152 N. Y. 244.) The statutory provisions authorizing the city through its commissioner of plant and structures to operate a railroad on the Williamsburg bridge are constitutional. (*Sun P. & P. Co.* v. *Mayor*, 152 N. Y. 257; *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475.) Neither a certificate of necessity and convenience under section 9 of the Railroad Law nor a certificate of approval under section 53 of the Public

Service Commissions Law is required under the circumstances involved herein. (*People ex rel. Conklin* v. *Boyle*, 98 Misc. Rep. 364; *Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540; *B. H. R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 244; *Village of Fort Edward* v. *H. V. Ry. Co.*, 192 N. Y. 139; *People ex rel. Kelly* v. *P. S. Comm.*, 171 App. Div. 810.)

*William N. Dykman* for respondent. The New York charter does not authorize the proposed operation of a railroad over the Williamsburg bridge. (*Gordon* v. *Strong*, 3 App. Div. 395.) The city is forbidden by the Railroad Law to construct or operate a railroad until it has obtained from the public service commission the certificate of convenience and necessity prescribed by section 9 of the Railroad Law. (*Brooklyn City R. Co.* v. *Whalen*, 191 App. Div. 737; *Manhattan Bridge 3-Cent Line* v. *B. H. R. R. Co.*, 78 Misc. Rep. 220; 159 App. Div. 567; 222 N. Y. 718.) The city cannot operate the railroad over the street until it has the permission and approval of the public service commission under section 53 of the Public Service Commissions Law. (*Schinzel* v. *Best*, 45 Misc. Rep. 455.)

POUND, J. The city of New York owns four bridges over the East river, including the Williamsburg bridge. Railroad companies operate surface and elevated or subway cars on all of them but the city owns the railroad tracks. The Williamsburg bridge was opened in 1904, and the cars running over it were thus operated with the co-operation of the city until April 27, 1920, when a change in policy occurred. Direct municipal operation of the railroad bridge service was provided for. The board of aldermen adopted an ordinance, which was approved by the mayor on May 3, 1920, providing that after the termination of any existing right no permit should be granted to or any contract entered into with any person

or corporation allowing such person to operate cars on the tracks owned by the city of New York over the Williamsburg bridge and the approaches on the route known as the bridge local service and at that time operated by the Bridge Operating Company; that immediately after the termination of existing permits all such transportation service over the bridge local route should be operated directly by the city of New York. The department of plant and structures was designated as the agency of the city in the operation of such service and it was provided that the fare to be charged for passage on the cars so to be operated by the city should in no case be fixed at a sum greater than the amount necessary to cover the cost of operation of such service, plus the necessary reserve for sinking funds and depreciation.

By subsequent ordinances the commissioner of plant and structures was authorized, after provision for funds had been made, to enter into contracts to construct a barn and to lay rails from the Brooklyn plaza of the Williamsburg bridge to the barn, and for the purchase of cars, and also to make agreements for supplying the electrical current; all in connection with the operation of the local line on the Williamsburg bridge, at an amount not to exceed $300,000.

The city purchased cars, is now constructing a car barn under the structure of the Williamsburg bridge between Bedford avenue and Berry street, and is constructing a single track along the side of the said bridge for the purpose of connecting the city-owned track on the bridge with the city barn now in construction. To do this it will be necessary to lay the city's tracks across the tracks of the defendant company, located on Driggs avenue and Bedford avenue, which streets pass under the existing structure of the Williamsburg bridge.

Commissioners were appointed under section 22 of the Railroad Law (Cons. Laws, ch. 49), to regulate such intersection and an order was made confirming their report.

The Appellate Division reversed such orders and denied the motion.  The result of this disposition of the proceeding is to deny to the city of New York the right to operate its railroad over the bridge.

The contention of the defendant is (1) that neither the city nor the commissioner of plant and structures has any franchise or power or authority to operate a railroad over the Williamsburg bridge;  (2) that the city has not, nor has Mr. Whalen, commissioner of plant and structures, obtained a certificate of convenience and necessity, required by section 9 of the Railroad Law (Cons. Laws, ch. 49), or the permission and approval required by section 53 of the Public Service Commissions Law (Cons. Laws, ch. 48); and (3) that any legislative delegation of power to the city to operate a railroad would be and is unconstitutional because of the prohibition contained in the State Constitution in article 8, section 10, which provides that no city shall be allowed to incur any indebtedness except for city purposes.

The power of the city or of the commissioner of plant and structures on its behalf to operate a railroad on the Williamsburg bridge is traced as follows: The construction of the Williamsburg bridge was authorized by chapter 789, Laws 1895.  This act provided for the appointment of three commissioners by the mayor of the then city of New York and three commissioners by the mayor of the then city of Brooklyn, which six commissioners, with the respective mayors of both cities, constituted a commission for the purpose of constructing the Williamsburg bridge.

Section 7 provided: " *When the said bridge shall be completed* the said commissioners shall make their final report. * * *  The said bridge shall thereupon be and become a public highway for the purpose of rendering travel between the cities of New York and Brooklyn safe and certain at all times, *and the care, management and control thereof shall be vested in the Trustees of the New York and Brooklyn bridge* [the old Brooklyn bridge] *who shall possess*

*in relation thereto like powers as are vested in them in relation to the said New York and Brooklyn bridge."*

Section 7 was amended by chapter 612 of the Laws of 1896, in effect May 13, 1896, to read as follows: "The said bridge shall thereupon be and become a public highway for the purpose of rendering travel between the cities of New York and Brooklyn safe and certain at all times, and the care, management and control thereof shall be vested in the said commissioners and their successors, *who shall possess in relation thereto like powers as are at the time of the passage of this act vested in the trustees of the New York and Brooklyn bridge in relation 'to the said New York and Brooklyn bridge, unless the legislature shall otherwise provide therefor."* The effect of this amendatory act, unless language is meaningless to express a given purpose, was to give to the Williamsburg bridge commissioners, after completion of the bridge, the same powers in relation to the Williamsburg bridge as were exercised by the trustees of the old Brooklyn bridge in relation to that bridge. The above words, "in relation thereto," relate clearly to the word "bridge," not to the qualifying words, "care, management and control thereof."

What powers did the trustees of the Brooklyn bridge exercise on May 13, 1896, in relation to that bridge? Chapter 300 of the Laws of 1875, section 7, provides: "The said trustees shall have power to fix the rates of toll for persons, vehicles, and animals of every kind and description, passing over the said bridge; *and may operate and authorize to be operated, a railroad or railroads over said bridge,* and fix the fare to be paid by any passenger on any railroad operated by them." These powers were continued by the Consolidation Act (Laws of 1882, chap. 410, sec. 1890). The charter of the city of New York, passed in 1897, being Laws of 1897, chapter 378, section 595, provides that the commissioner of bridges shall have cognizance and control of the management and mainte-

nance of the New York and Brooklyn bridge, of the operation of the railroad on the New York and Brooklyn bridge, and of the construction, repair, maintenance and management of all other bridges except " The East River Bridge " (that is the Williamsburg bridge). (*People ex rel. McCarthy* v. *Shea,* 51 App. Div. 227; affd., 164 N. Y. 573.) The Williamsburg bridge commission was then in existence and the Williamsburg bridge was in the course of construction. The charter was amended in 1901 (Ch. 466), and by section 595 the commissioner of bridges still had the management and maintenance of the New York and Brooklyn bridge and had control " of the operation of the railroad on the New York and Brooklyn bridge." And in subdivision 5 the bridge commissioner was given, in general terms, the management of all other bridges. This is followed by an express statement that the Williamsburg bridge commission " *is hereby abolished, and all its powers and duties are hereby devolved upon the commissioner of bridges of the city of New York.*"

From the foregoing it plainly appears that the Williamsburg bridge commission had the power to complete the bridge and the power to operate and authorize to be operated a railroad over it (*Gordon* v. *Strong,* 3 App. Div. 395; affd., 160 N. Y. 659; *Hearst* v. *Berri,* 24 App. Div. 73; affd., 156 N. Y. 169), and that this power was transferred to the city of New York to be exercised by the commissioner of bridges of the city of New York, and that the legislature has not otherwise provided therefor except that by chapter 528 of the Laws of 1916 such powers were conferred on the commissioner of plant and structures. Chapter 663 of the Laws of 1897, regulating the carriage of passengers across the New York and Brooklyn bridge, provides that the trustees of the Brooklyn bridge might continue to maintain and " to operate the present railroad on said bridge," but this act does not limit the power already delegated to the Williamsburg bridge commission as of May 13, 1896, which in turn devolves upon the present

commissioner of plant and structures of the city of New York. Neither does section 601 of the city charter, abolishing the office of trustees of the Brooklyn bridge and vesting their powers in the commissioner of plant and structures and the board of aldermen, affect the franchise granted to the trustees of the Williamsburg bridge.

The city of New York, through its commissioner of plant and structures, has and since 1896 has had an existing right and franchise to operate or cause to be operated a railroad on the Williamsburg bridge. It has exercised such right and franchise to cause the railroad to be operated. It made contracts for the operation of street surface cars over the Williamsburg bridge and cars were so operated under such contracts on the city's tracks across such bridge until this controversy arose.

The grant of a street railroad franchise carries with it by implication the right to maintain sidings and switches and a spur necessary to enable a railroad to connect with a storehouse for its cars, without which the line could not be operated. This is a right incident to the grant. (*Bklyn. Heights R. R. Co.* v. *Steers*, 213 N. Y. 76, 81.) It follows that the legislature having conferred the right to operate a railroad over the Williamsburg bridge upon the city of New York, the city may erect a barn underneath the structure of the bridge and by necessary trackage connect the existing bridge tracks with the barn. If in the course of making this connection it is necessary to cross over the tracks of the defendant, the law makes. provision therefor.

In order to operate the railroad and to construct the. necessary trackage, no certificate of public convenience and necessity nor permission of the public service commission is required. The right and franchise to operate its railroad under contracts under the special statute vested in the city as a municipal corporation, not as a railroad corporation or private common carrier (*Sun Printing & Publishing Assn.* v. *Mayor, etc., of N. Y.*, 152 N. Y. 257,

267), and was exercised until shortly before the commencement of this action. (*Schinzel* v. *Best*, 45 Misc. Rep. 455; 109 App. Div. 917.) The entire scheme under which the bridge was constructed indicates plainly that the city's authority comes direct from the legislature and not through the public service commission, and that convenience and necessity and permission were all decreed in 1895 and 1896 by legislative fiat.

The question as to whether the legislature has the power to grant to a municipal corporation the right to operate such a railroad is answered affirmatively in *Sun Printing & Publishing Assn.* v. *Mayor, etc., of N. Y.* (*supra*). The bridge is a public highway and is so declared to be. (L. 1895, ch. 789, § 7.) Common highways have always been regarded as under the special care, supervision and control of municipal governments, and their construction and management are clearly within the provision of the Constitution a city purpose. It follows that railroads and bridges which serve the same purposes as common highways may, under legislative authority, be constructed and operated by a city.

The power to operate a railroad across the Williamsburg bridge was granted by the legislature in 1896 without qualification or restriction. It was not then dependent upon the subsequent approval of the public service commission and has not since become so. The public service commission may not veto a statute. It is only a legislative creature. It " was not created for the convenience of corporations but for the protection of the public." (VANN, J., in *Village of Ft. Edward* v. *H. V. Ry. Co.*, 192 N. Y. 139, 150.)

The order of the Appellate Division should be reversed and the orders of the Special Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, CRANE and ANDREWS, JJ., concur; McLAUGHLIN, J., not voting.

Ordered accordingly.