New York Consolidated Railroad Company, Respondent, *v.* The City of New York, Appellant.

Municipal corporations — New York city — contract — commissioner of bridges of city of New York head of a department and subject to restrictions of charter in letting contracts for improvements — without power to enter into oral agreement with railroads that city would pay expense, in excess of specified sum, incurred in improving terminal of Brooklyn Bridge — separate defenses, in action to recover excess, that commissioner was without authority, that contract was not made on competitive bids as required by charter and that no appropriation had been made prior to execution of contract, improperly dismissed.

1. The commissioner of bridges of the city of New York, provided for in sections 100 and 601 of the charter (L. 1901, ch. 466), was the head of a department and subject to the provisions of section 419 directing that all contracts for work or supplies for the city in excess of $1,000 were to be founded on sealed bids after notice to bidders, and of section 1541 directing that no expense should be incurred by

# N. Y. Consolidated R. R. Co. *v.* City of N. Y. 141

any of the departments, boards or officers of the city unless an appropriation should have been previously made covering such expense.

2. Chapter 712 of the Laws of 1901, as amended by chapter 90 of the Laws of 1907, providing, among other things, for the adoption of plans and specifications for the extension or reconstruction of the Manhattan terminal of the Brooklyn Bridge, by the commissioner, with the approval of the board of estimate and apportionment of the plan, the contract and the scheme of payment, does not apply to the Brooklyn terminal, and, without some such authority, the commissioner had no power to bind the city by an oral contract with plaintiff's predecessors whereby they were to make improvements of the Brooklyn terminal and pay the cost thereof to a specified amount, the excess to be paid by the city.

3. In an action, therefore, to recover from the city of New York the amount of such excess cost, separate defenses that the commissioner of bridges was without authority to impose any portion of such expense on the city; that the contract for such services and material was not made on competitive bids after public notice, as required by the charter and that no appropriation was made available to pay therefor before the commissioner of bridges contracted therefor at the expense of the city, as required by the charter, were good, and judgment for the defendant should have been granted thereon. (*City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463, distinguished.)

*N. Y. Consolidated R. R. Co.* v. *City of New York*, 216 App. Div. 814, reversed.

(Argued November 23, 1926; decided December 31, 1926.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 17, 1926, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*George P. Nicholson*, Corporation Counsel (*John F. O'Brien, Elliot S. Benedict, Alex I. Hahn* and *Thomas W. A. Crowe* of counsel), for appellant. By reason of the absence of approval by the board of estimate and apportionment as required by chapter 712, Laws of 1901, as

amended by chapter 90, Laws of 1907, the two operating agreements of August 7, 1907, are invalid. The same is true in respect to construction contracts rendered necessary by these two operating agreements. (*Hearst* v. *Berri*, 24 App. Div. 74; *Hearst* v. *Shea*, 156 N. Y. 169; *People ex rel. McCarthy* v. *Shea*, 51 App. Div. 227; 164 N. Y. 573.) The city, while acting through the commissioner of bridges in the execution of construction contracts for those improvements of railroad tracks and appurtenances on the Brooklyn Bridge which were rendered necessary by the two operating agreements of August 7, 1907, was governed by those provisions of the Greater New York charter which require contracts for more than $1,000 to be in writing and to be founded upon competitive bids and which require a pre-existing appropriation sufficient to defray the expense. (*Brady* v. *Mayor, etc.*, 20 N. Y. 312; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Molloy* v. *City of New Rochelle*, 198 N. Y. 402; *Hart* v. *City of New York*, 201 N. Y. 45; *Gage* v. *City of New York*, 110 App. Div. 403; *Winter* v. *City of Niagara Falls*, 190 N. Y. 198; *Hungerford* v. *Village of Waverly*, 125 App. Div. 311; *N. Y. Cons. R. R. Co.* v. *City of N. Y.*, 204 App. Div. 171.)

*Charles L. Woody* and *George D. Yeomans* for respondent. The passage of chapter 712 of the Laws of 1901, and the amendment thereof by chapter 90 of the Laws of 1907, did not take away from the commissioner of bridges his power to agree with the respondent for the doing of the work done on city's railroad. (*City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463; *Hearst* v. *Berri*, 34 App. Div. 75; *Knapp* v. *City of Brooklyn*, 97 N. Y. 523; *Barber* v. *Rowe*, 200 App. Div. 295; *People ex rel. Shipston* v. *Thompson*, 187 N. Y. Supp. 397; 196 App. Div. 923; 231 N. Y. 541.) The commissioner of bridges had authority to maintain and cause to be maintained the railroad tracks as a part of

the bridge, and for the public convenience to make changes in the trackage facilities, and to agree with the railroad company for it to do all the work and to agree that the city would reimburse the railroad company for expenditures over and above $110,000, and the law did not require the commissioner to advertise for bids.   The charter provisions in regard to the letting of city contracts generally did not apply.   (*Casterton* v. *Town of Vienna,* 17 App. Div. 94; 163 N. Y. 368; *Whipple* v. *Christian,* 15 Hun, 321; 80 N. Y. 523; *Matter of Montefiore Home,* 159 App. Div. 644; 211 N. Y. 549; *People ex rel. New York,* 200 N. Y. 423; *Meyers* v. *City of New York,* 58 App. Div. 536; *Matter of Dugro,* 50 N. Y. 513; *Harlem Gas L. Co.* v. *Mayor,* 33 N. Y. 309; *Swift* v. *Mayor, etc.,* 83 N. Y. 528; *Davis* v. *Mayor, etc.,* 83 N. Y. 207; *Farmers' Loan & Trust Co.* v. *Mayor, etc.,* 41 Bosw. 80; *Smith* v. *Mayor,* 2 How. Pr. 1.)

Pound, J.   Plaintiff seeks to recover for work performed and material supplied in making improvements on the Brooklyn bridge and its terminals under the following conditions: In August, 1897, the trustees of the New York and Brooklyn bridge made written agreements with several of plaintiff's predecessors for the construction and maintenance of track connections and platforms on the Brooklyn bridge at the expense of the railroads and the operation by them of trains across the bridge.   Thereafter the commissioner of bridges of the city of New York became the official successor to the bridge trustees.   Modifying agreements were entered into for (1) extension of tracks in the western or Manhattan terminal, (2) elevation of tracks over Sand street, Brooklyn, (3) rearrangement and rebuilding of tracks at the Brooklyn terminal, (4) construction of loops at the Brooklyn terminal.   The complaint alleges that it was finally agreed between plaintiff's predecessors and the commissioner of bridges that the railroads would make

the improvements and would pay the cost thereof not to exceed $110,000 and the city would pay the excess of such cost over such sum; that such excess was $55,086.33, for which judgment was demanded. This agreement was not evidenced by a formal document but was partly written and partly oral. The city's answer denies the making of the contract. It sets up three separate defenses: 1. That the commissioner of bridges was without authority to impose any portion of such expense on the city; 2. That the contract for such services and material was not made on competitive bids after public notice, as required by the charter; 3. That no appropriation was made available to pay therefor before the commissioner of bridges contracted therefor at the expense of the city, as required by the charter.

The separate defenses were stricken out as insufficient in law. The order granting judgment thereon is brought up for review on this appeal. The agreement relied on was established on the trial by the evidence of a single witness who was not contradicted. The court thereupon directed a verdict for the plaintiff. We cannot ignore, in considering the points of law which remain for our consideration, the far-reaching consequences of a holding that the spoken word of the commissioner of bridges may bind the city.

The trustees of the New York and Brooklyn bridge were not governed by the Greater New York charter which did not exist when they functioned, nor by the Consolidation Act or the Brooklyn charter. Their powers were conferred by a series of statutes and were very broad. We need not consider them in this connection. By section 601 of the Greater New York charter their office was abolished and their powers were vested in the commissioner of bridges as the head of the department of bridges "subject, however, to the provisions, directions and limitations" of the charter and "so far as they are consistent with and conformable to the provisions"

thereof.  By the provisions of section 419 of the charter as it existed at the time the contracts in question were made a limitation was placed on the contractual power of all heads of departments.  All contracts for work or supplies for the city of New York in excess of $1,000 were directed to be founded on sealed bids after public notice to bidders, and let, with certain exceptions, to the lowest bidder.  Section 1541 directed that no expense should be incurred by any of the departments, boards or officers thereof unless an appropriation should have been previously made covering such expense.  No head of a department possessed the arbitrary power to involve the city in legal liability to an unlimited amount by verbal contracts.  The commissioner of bridges was the head of a department and was not exempt from obedience to these salutary and suitable restrictions, although it is obvious that even compliance with these provisions would not authorize the contract sued on and that such authority, if existent, must be found elsewhere.

That such authority as the commissioner of bridges is found to have asserted in this case was not within the legislative intention is evidenced by chapter 712 of the Laws of 1901, as amended by chapter 90 of the Laws of 1907, which was an act to relieve congestion and facilitate traffic on the New York and Brooklyn bridge by improvements at the westerly or Manhattan terminal.  Only a small portion of the work here involved was done on the Manhattan terminal.  The statute does not in terms apply to the Brooklyn terminal.  While we cannot agree with the contention of the corporation counsel that this act applies to the Brooklyn terminal, it evidences the character of legislation called for to authorize the contract in suit and we find no other grant of authority for the commissioner of bridges to make a contract whereby the railroads are to do the work and the city is to share the expense.  Such an arrangement, as we have suggested,

10

does not fall within the provisions of section 419 of the charter for it is not germane thereto.  The act provides among other things for the adoption of plans and specifications for the extension or reconstruction of the Manhattan terminal by the commissioner with the approval of the board of estimate and apportionment and for entering into contracts for such extension and reconstruction with like approval with any of the railroad corporations operating on the bridge, and with like approval for the payment of the whole or any part of the cost of such construction by the city of New York.  The Legislature thus placed a check upon the commissioner by requiring the approval of the board of estimate and apportionment to the plan, the contract and the scheme of payment.  Without some such authority the commissioner had no power to bind the city by the contract in suit although he had, as a part of his general powers of management and maintenance, authority to agree with the railroads to have the work approved by him done at their expense.  It follows that the separate defenses were good and judgment for the defendant should have been granted thereon.

It appears that in 1909 plaintiff presented its claim to the city as an " illegal or invalid claim " under section 246 of the city charter which permits the comptroller to certify to the board of estimate and apportionment for their consideration such claims against the city as have an equitable aspect although not legally enforcible.  This action was begun in 1913.  There the matter slept until after the decision of this court in *City of New York* v. *Brooklyn City Railroad Co.* (232 N. Y. 463) which is cited below as a pertinent authority.  In that case not only had the board of aldermen authorized the commissioner of plant and structures to enter into contracts in connection with the municipal operation of the Williamsburgh bridge and fixed the limit of his expenditure but the only question considered was whether the city of New York

had, through its commissioner of plant and structures, an existing right or franchise to operate a railroad on the Williamsburgh bridge unrestricted by the provisions of the Public Service Commissions Law, or other like general statutes. The point here in issue was not even remotely involved.

It follows that the judgments should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.