BROOKLYN-MANHATTAN TRANSIT CORPORATION, Respondent, *v.*
THE CITY OF NEW YORK, Appellant.

Second Department, May 19, 1927.

Municipal corporations — city of New York — action to recover balance
due on contract for repair of Williamsburg bridge — board of aldermen
of city of New York adopted resolution authorizing commissioner of
plant and structures to purchase, in open market, necessary materials
and labor — complaint alleges that board of estimate and apportion-
ment duly adopted resolutions appropriating money to pay for work —
answer denied adoption of said resolutions and also alleged as affirma-
tive defense that appropriation was not made in compliance with
Greater New York Charter, § 1541, and that comptroller of city did not
make certificate pursuant to section 149 — Greater New York Charter,
§§ 149, 1541, are binding and controlling upon commissioner of plant
and structures with respect to expenditures incurred for work in main-
tenance of Williamsburg bridge — affirmative defense raises issue and
motion for judgment on the pleadings  should have been denied.

In this action against the city of New York, the plaintiff seeks to recover the
balance alleged to be due for labor and materials used in the repair of the
Williamsburg bridge.  The complaint alleges that the board of aldermen of
the city of New York adopted a resolution authorizing the commissioner of
plant and structures to purchase in the open market, without public letting,
the necessary materials and labor for the repair of the bridge, not to exceed a
stated amount.  The complaint also alleges that the board of estimate and
apportionment duly adopted resolutions appropriating money to pay for the
work, and that by virtue of said resolutions the commissioner of plant and
structures by an open market order requested plaintiff's predecessor to furnish
the labor and materials necessary for the work.  The answer denies that the
board of estimate and apportionment adopted the resolutions stated, appro-
priating money to pay for the work, and as a separate defense alleges that no
such appropriation was made in compliance with section 1541 of the Greater
New York Charter, and that, therefore, the open market order was illegal and
void.  The answer also alleges as a defense that the comptroller of the city did
not certify, pursuant to section 149 of the charter, that of the appropriation
or fund applicable to the payment for the work there remained an unexpended
and unapplied balance sufficient to pay the expense of executing the open
market order.

Plaintiff's contention that the denial that the board of estimate and apportionment
adopted the resolutions alleged in the complaint is insufficient to raise an issue,
inasmuch as the allegation was not necessary, is immaterial, for the defendant
has pleaded, as a separate defense, that no appropriation was ever made or
authorized.

The control of the Williamsburg bridge by a board of commissioners, under the
authority of specific statutes, was abolished by subdivision 5 of section 595 of
the Greater New York Charter (Laws of 1901, chap. 466), and all the powers
of the board of commissioners, and their duties, were transferred to a commis-
sioner of bridges of the city of New York.  The transfer of authority was made
without limit or qualification.  The title of the commissioner of bridges was

subsequently changed by chapter 528 of the Laws of 1916 to the commissioner of plant and structures.

The commissioner of plant and structures of the city of New York is the head of a department and subject to the provisions of sections 149 and 1541 of the Greater New York Charter with reference to the letting of contracts for work, and, therefore, the affirmative defense that those sections have not been complied with raised an issue, and it was error for the court to grant summary judgment in favor of the plaintiff upon the theory that the control and management of the Williamsburg bridge was not subject to said provisions of the Greater New York Charter.

Appeal by the defendant, The City of New York, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 5th day of January, 1925, granting plaintiff's motion for judgment on the pleadings, and also from a judgment entered in said clerk's office on the same day pursuant to said order.

*Joseph A. Devery* [*George P. Nicholson, Corporation Counsel,* and *Alexander I. Hahn* with him on the brief], for the appellant.

*D. A. Marsh* [*George D. Yeomans* with him on the brief], for the respondent.

Hagarty, J. This action, upon four counts, was originally brought by Lindley M. Garrison, as receiver of the Brooklyn Rapid Transit Company, to recover from the city of New York the aggregate sum of $5,212.87, together with interest in varying amounts upon the separate sums alleged to be due and owing to plaintiff. By an order subsequently made, the Brooklyn-Manhattan Transit Corporation was substituted as plaintiff in place of Mr. Garrison.

The four causes of action set forth in the complaint are identical in tenor, except that they involve separate transactions and are for different amounts. They involve four separate orders given respectively in 1916, 1917, 1918 and 1919 for work performed during 1917, 1918 and 1919. For the purposes of this opinion, therefore, it will be necessary to set forth the essential allegations contained in the first cause of action only. They are as follows:

By virtue of a certificate of merger, dated July 26, 1918, the Transit Development Company was merged into the Brooklyn Rapid Transit Company, and the Brooklyn Rapid Transit Company thereupon succeeded to the rights, of every description, belonging to the Transit Development Company; that Lindley M. Garrison was appointed temporary receiver of the Brooklyn Rapid Transit Company, and, subsequently, receiver *pendente lite;* that defendant, the city of New York, owned and controlled the Williamsburg bridge, its approaches and appurtenances; that on or about the

7th day of July, 1916, the board of aldermen of the city of New York adopted, and on July 20, 1916, the mayor approved, the following resolution:

"*Resolved*, That in pursuance of the provisions of Section 419 of the Greater New York Charter, the Commissioner of Plant and Structures be and he is hereby authorized and empowered to purchase in the open market, without public letting, the necessary materials, labor and hire of plant, tools and appliances for renewing the surface railway tracks on the Williamsburgh Bridge to an amount not exceeding one hundred seventy-five thousand dollars ($175,000)."

It is further alleged that the board of estimate and apportionment duly adopted resolutions appropriating money to pay for the work; that pursuant to the resolution of the board of aldermen, the commissioner of plant and structures, by an open market order, numbered 1903, requested the Transit Development Company to furnish all labor and materials necessary for the doing of the work; that said order numbered 1903 was accepted by the Transit Development Company, which furnished the labor and materials at a cost stated; that the city of New York made two payments on account of the amount due for the work, leaving due and owing a balance of $1,022.69; that there was indorsed upon said open market order a certificate of the deputy commissioner of plant and structures to the effect that the work was necessary, that the expenditures therefor had been duly authorized and appropriated, and that a certificate of necessity of such expenditures had been placed on file in his department before the expenditures were incurred.

The answer, by its 1st paragraph, denied that the board of estimate and apportionment adopted resolutions appropriating money to pay for the work. As a separate defense it alleged: (1) That no such appropriation had been made in compliance with section 1541 of the city charter, and that the open market order was, therefore, illegal and void; (2) that the comptroller of the city did not certify, pursuant to section 149 of the charter, that of the appropriation or fund applicable thereto there remained, unexpended and unapplied, a balance sufficient to pay the estimated expense of executing the open market orders.

The plaintiff's motion for judgment on the pleadings was granted, and the following opinion was rendered by the learned justice at Special Term: " It was virtually agreed upon the argument that the case of *New York Consolidated Railroad Company* v. *City of New York* (204 App. Div. 171) was decisive of this motion; hence it is granted, with ten dollars costs."

The respondent contends that the denial contained in the 1st

paragraph of the answer does not raise an issue.   The 1st paragraph of the answer denies the allegation, contained in the 7th paragraph of the complaint, that the board of estimate and apportionment adopted resolutions appropriating the moneys necessary to pay for the work — a preliminary required by section 1541 of the charter, which provides, with exceptions not here applicable, that no expense shall be incurred by any department, board or officer, " unless an appropriation shall have been previously made covering such expense."   The respondent's claim is that its allegation was ·not necessary, and that the lack or insufficiency of an appropriation to pay for work done is an affirmative defense which, to defeat recovery, must be pleaded and proved.   As authority it cites *McNulty* v. *City of New York* (168 N. Y. 117).   The argument cannot aid the respondent, however, since, besides the mere denial contained in the 1st paragraph of the answer, there is, in the 3d paragraph, as a separate defense, the allegation that no appropriation had ever been made or authorized.

We· now come to the main question, which is whether the provisions of the charter, including sections 149 and ‑1541, are binding and controlling upon the commissioner of plant and structures with respect to expenditures incurred for work in the maintenance of the Williamsburg bridge.   The appellant claims that the provisions of the charter are binding, and that the court erred in finding to the contrary.   The respondent contends that the commissioner does not derive authority over the Williamsburg bridge from the general provisions of the charter, but that he is vested with authority thereover by virtue of specific statutes.   If that be so, the provisions of sections 149 and 1541 of the charter are not applicable.

Sections 3 and 5 of chapter 300 of the Laws of 1875 provided ·. that the trustees of the " bridge in the course of construction over the East river," since popularly known as the " Brooklyn bridge," were empowered to incur expenses for its construction and maintenance, such expenses to be borne by the cities of New York and Brooklyn.   By section 7 of the same act the trustees were given power to operate a railroad on the bridge.

Chapter 789 of the Laws of 1895 provided for the construction of " a bridge over the East river," since known as the " Williamsburg bridge," and full authority for its construction was vested in a commission therein directed to be appointed.   Section 7 of that act provided that, upon the completion of the bridge, its " care, management and control " should vest in the trustees of the Brooklyn bridge.   By section 4 of chapter 612 of the Laws of 1896, section ⁷ of chapter 789 of the Laws of 1895 was amended so as to provide that after the completion of the Williamsburg

bridge, its care, management and control should vest in the commissioners who had charge of its construction, and in their successors; and it was therein expressly provided that such commissioners should possess, in connection therewith, " like powers as are at the time of the passage of this act vested in the trustees of the New York and Brooklyn bridge in relation to the said New York and Brooklyn bridge, unless the Legislature shall otherwise provide therefor." The date of the passage of the act was May 13, 1896, so the powers conferred upon the commissioners of the Williamsburg bridge were such as, with respect to the older bridge, the trustees of the Brooklyn bridge enjoyed on that date. (See *City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463, 468.) At that time the Greater New York Charter had not been adopted, and the trustees of the Brooklyn bridge were not restricted by any such provisions as those contained in sections 149 and 1541.

In the charter (Laws of 1897, chap. 378), by section 594 thereof, the head of the department of bridges was denominated the commissioner of bridges, and by section 595 he was given " cognizance and control " of the management and maintenance of the Brooklyn bridge, and of " the construction, repair and maintenance of all other bridges that are or may be in whole or in part a public charge, not included in public parks, within the territory of The City of New York." From this provision the statute expressly excepted " the East River [Williamsburg] Bridge."

By the revised Greater New York Charter (Laws of 1901, chap. 466, § 595, subd. 5) the board of commissioners, established by chapter 789 of the Laws of 1895, the powers of which were enlarged by section 7 of the act of 1895, as amended by chapter 612 of the Laws of 1896, was abolished, and all its powers and duties were transferred to the commissioner of bridges. The transfer of authority was made without limit or qualification. The title of the commissioner of bridges was, by chapter 528 of the Laws of 1916, changed to " Commissioner of Plant and Structures."

The question presented is whether the power vested in the commissioners of the Williamsburg bridge, who were given the same power as was possessed by the trustees of the Brooklyn bridge on May 13, 1896, is subject to the provisions, directions and limitations of the charter. If it is, the provisions of sections 149 and 1541 are applicable, and the answer having alleged, as a separate defense, that they were not complied with, an issue was raised, and the motion for judgment on the pleadings should have been denied.

The learned Special Term assumed that those sections were not applicable, and decided the motion upon the authority of *New*

*York Consolidated R. R. Co.* v. *City of New York* (204 App. Div. 171). In that case the action was to recover the balance of the cost of work on the terminal of the Brooklyn bridge. The complaint alleged that the work was done pursuant to a contract entered into by the commissioner of bridges. The answer, in addition to denials, set up three separate defenses, the second and third of which were that the contract was illegal because the sum involved was in excess of $1,000, and that the contract, therefore, should have been let by public bidding; and that it was illegal for the further reason that there was no appropriation for the improvement, as required by the charter. The *per curiam* opinion stated: " The motion made in this case brought up the question of the sufficiency of the defenses, and they were correctly held insufficient. The defenses all rested upon the proposition that the authority of the bridge commissioner was limited by the provisions of the Greater New York Charter and are all answered by the logic of *Schinzel* v. *Best* (45 Misc. Rep. 455; affd., 109 App. Div. 917); *City of New York* v. *Brooklyn City R. R. Co.* (232 N. Y. 463); *Hearst* v. *Berri* (24 App. Div. 74) and *Knowles* v. *City of New York* (176 N. Y. 430). The doctrine of these cases, generally, and of *City of New York* v. *Brooklyn City R. R. Co.* (*supra*) especially, is that the commissioner derives his power and authority from the statutes defining his office, unlimited by the provisions of general statutes." (pp. 172, 173.) That case finally reached the Court of Appeals ( *N. Y. Consolidated R. R. Co.* v. *City of N. Y.*, 244 N. Y. 140) upon an appeal from a subsequent judgment in favor of the plaintiff, entered upon a verdict directed by the court. The Court of Appeals reversed the judgment and dismissed the complaint. In quoting from the opinion, I have written in italics the words that I deem to be of importance in the decision of the present case: " The trustees of the New York and Brooklyn Bridge were not governed by the Greater New York Charter which did not exist when they functioned, nor by the Consolidation Act or the Brooklyn charter. Their powers were conferred by a series of statutes and were very broad. We need not consider them in this connection. By section 601 of the Greater New York Charter their office was abolished and their powers were vested in the commissioner of bridges as the head of the department of bridges ' *subject, however, to the provisions, directions and limitations* ' *of the charter* and ' so far as they are consistent with and conformable to the provisions ' thereof. By the provisions of section 419 of the charter as it existed at the time the contracts in question were made a *limitation was placed on the contractual power of all heads of departments*. All contracts for work or supplies for the city of New York in excess of $1,000

were directed to be founded on sealed bids after public notice to bidders, and let, with certain exceptions, to the lowest bidder. Section 1541 directed that no expense should be incurred *by any of the departments, boards or officers* thereof unless an appropriation should have been previously made covering such expense. No head of a department possessed the arbitrary power to involve the city in legal liability to an unlimited amount by verbal contracts. *The commissioner of bridges was the head of a department and was not exempt from obedience* to these salutary and suitable restrictions." (pp. 144, 145.) While that case involved a contract in connection with the Brooklyn bridge, and not one in connection with the Williamsburg bridge, it will be noted that the court held that all heads of departments, of whom the commissioner of bridges (now the commissioner of plant and structures) is one, are bound by the " salutary and suitable restrictions " of the charter. But the rule laid down in that case must, of necessity, apply to the Williamsburg bridge, because of the provisions of the 1901 amendment to the charter (Laws of 1901, chap. 466, § 595), which, among other things, provides that the commissioner of bridges (now the commissioner of plant and structures) shall have cognizance and control: " (5) Of the construction, repair, maintenance and management of all other bridges [the Brooklyn bridge was specifically referred to in a preceding subdivision, and the Williamsburg bridge was not then completed] that are or may be in whole or in part a public charge, not included in public parks, or within the control of. a president of a borough, within the territory of The City of New York." (See, also, Greater New York Charter, § 595, subd. 1, ¶ (e), as amd. by Laws of 1916, chap. 528; since amd. by Laws of 1921, chap. 170.)

The statement of the Court of Appeals that the charter imposes a limitation upon all heads of departments of the city of New York with respect to the letting of contracts is controlling and applies to the expenditures involved in this case.

The order and judgment should be reversed upon the law, with costs, and the motion for judgment on the pleadings denied, with ten dollars costs.

KELLY, P. J., YOUNG, KAPPER and LAZANSKY, JJ., concur.

Order and judgment reversed upon the law, with costs, and motion for judgment on the pleadings denied, with ten dollars costs.